FOWLER, ᴇᴛ ᴀʟ. *v.* BENTON

[No. 5, September Term, 1966.]

*Decided February 16, 1967.*

*Motion for reargument filed on March 17, 1967, denied on April 5, 1967. Opinion modified.*

The cause was argued before HAMMOND, C. J., and OPPEN-
HEIMER, McWILLIAMS and FINAN, JJ., and MELVIN, J., As-
sociate Judge of the 5th Judicial Circuit, specially assigned.

*Mrs. Flora D. Fowler,* in proper person, with whom was
*Kenneth Leo Fowler* on the brief for appellants.

*Carlyle J. Lancaster,* with whom were *Welsh & Lancaster* on
the brief for appellee.

MELVIN, J., by special assignment, delivered the opinion of
the Court.

This is the second time that this case, involving an action
of fraud, has been appealed to this Court. On the first appeal,
reported as *Fowler v. Benton,* 229 Md. 571, this Court reversed
the trial court's granting of a directed verdict for the defen-
dant, Benton, and awarded the plaintiffs a new trial.

The plaintiff-appellants are Mr. and Mrs. Kenneth L. Fow-
ler and their eleven children. Mrs. Fowler, who is not a mem-
ber of the bar, represented herself and her family in proper
person at the trial below and on this appeal. On February 14,
1957, Mr. and Mrs. Fowler contracted with the defendant-ap-
pellee, Benton, a builder by trade, to purchase a partially com-
pleted house and lot owned by him in a subdivision known as
Seabrook Acres in Prince George's County. Several months pre-
viously, at a time when the building plans for the house called
for four bedrooms, Benton had installed on the property a septic
tank system under a permit issued to him by the Prince George's
County Health Department. The contract between Benton and
the Fowlers provided that he make certain alterations in the
second floor layout of the house to provide more sleeping ac-
commodations for the Fowlers' large family, the size of which
was known to Benton. (At the time of the contract there were

nine children.) When the alterations were completed the house had "five or six" bedrooms, to serve which the Health Department regulations required a larger septic tank (900-gallon capacity) than the tank Benton had already installed (750-gallon capacity).

Mr. Fowler testified that before executing the contract he told Benton that he "had a large family and did he feel that the septic tank system would accomplish [accommodate] a large family?" According to Mr. Fowler, Benton replied that *"the septic tank had been put in according to the Health Department regulations and he saw no reason why the septic tank wouldn't work and it would be perfectly adequate for the size family I had."* Actually, however, the septic system had never been approved for the increased accommodations.

The Fowlers moved into the premises on March 25, 1957. Shortly thereafter the septic tank system, apparently overburdened, overflowed and otherwise proved to be considerably less than "adequate."

The substance of the appellants' claim, as contained in their second amended declaration, was that Benton knowingly misrepresented to them that their septic tank system would be adequate for them. Among other claimed damages the declaration alleges that "the major injury resulting from the *defendant's fraudulent representation of the septic tank system* was, and still is, the serious illness with which the plaintiff, Kenneth Leo Fowler, was, and is, afflicted because of the unsanitary and hazardous conditions under which the plaintiffs were compelled to live." (Emphasis supplied.) There was evidence in the case from which the jury could have found that the source of Mr. Fowler's illness (amebiasis) was the unsanitary conditions caused by faulty septic systems generally in the neighborhood as well as the unsanitary conditions caused by the faulty septic system on the Fowler lot alone.

At the new trial the trial judge in his instructions to the jury submitted the case on two issues:

1. Was there any fraud imposed by the defendant upon the plaintiffs regarding the septic system?

2. Was Mr. Fowler's illness proximately caused by the alleged faulty septic system on their property?

The jury answered "Yes" to the first issue and awarded the Fowlers damages in the amount of $2,500. The jury's answer to the second issue was "No."

In this appeal the appellants allege numerous grounds for reversal and remand. One of them, that the verdict in special issue No. 2 was against the weight of the evidence, is not within the scope of review by this Court and cannot be considered. The issue presented to the jury was one of fact and while the Court of Appeals will review a case tried by the lower court without a jury on the evidence as well as on the law, the verdict of a jury on a question of fact is conclusive on appeal. The jury alone have the right and power to judge of the weight of the evidence. *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, and cases therein cited.

Before the retrial date the appellee filed a "Motion for Separate Trial of Issue of Law" pursuant to Maryland Rule 502. Upon consideration of the motion Judge Powers (who did not preside at the retrial) passed the following order, filed March 30, 1965:

"ORDERED, that testimony of damages in this cause is limited to those damages which the plaintiffs incurred up to the time of their discovery of the inadequacy of the septic tank system on their property, and that the time of the discovery of the inadequacy of said system by the plaintiffs shall be a matter for the jury to determine; that no evidence of damages shall be admitted in evidence in the trial of this case which occurred subsequent to a reasonable period of time after January 3, 1958 within which plaintiffs could have connected their system to the Washington Suburban Sanitary Commission line, the date of January 3, 1958 being the date the plaintiffs received notice from the Health Department of Prince George's County that the septic tank system installed on their property was inadequate; that testimony of damages occurring subsequent to the time herein before outlined shall not be admitted in evidence unless such damages bear a causal relationship to damages incurred prior to the time as herein set forth; and it is further

546

> "ORDERED, that damages for the cost of correct-
> ing the alleged inadequate septic tank system shall be
> limited to the cost of connecting their property to the
> line of the Washington Suburban Sanitary Commis-
> sion."

The first question presented for our review is whether or not
the lower court erred "in placing upon the appellants the limi-
tations which were set forth" in the above quoted order "and
then continued in the two special issues submitted to the jury."

The appellants argue that "With the Order of Court govern-
ing the trial, many legitimate items of damage were discarded
by the trial judge." We deem it unnecessary to decide, *in vacuo,*
whether or not the order in all respects correctly stated the law
of the case concerning allowable damages, for it is evident
from an examination of the record that the order did not "gov-
ern" the trial judge in his rulings on the evidence or his in-
structions to the jury. Moreover, appellants refer us to no spe-
cific "item of damage" offered by them, nor do we find any in
the record, which the trial judge "discarded" because of Judge
Powers' order. As will be seen later in this opinion, the trial
judge's rulings on evidence were based on considerations quite
apart from any "limitations" contained in the order. Under these
circumstances, any possible error in the content of the order it-
self does not constitute reversible error.

Furthermore, as we understand the appellants' argument on
this point, their real complaint is that special issue No. 2 and
the trial judge's accompanying instructions were erroneous in
that they did not allow the jury to award damages for Mr.
Fowler's illness unless it first found that the illness was "proxi-
mately caused by the faulty septic system *on the Fowler prop-
erty.*" (Emphasis supplied.) It is the appellants' theory of the
case that Benton's alleged fraud consisted not only of actively
misrepresenting the septic system on the Fowler lot but con-
sisted also of his failure to inform the appellants of the faulty
septic systems on the other lots in the development. From this
premise, appellants argue that they are entitled to monetary
damages for Mr. Fowler's illness if the illness resulted from
unsanitary conditions caused by faulty septic systems generally

in the neighborhood, and not only if the illness resulted from the unsanitary conditions caused by the faulty septic system on the Fowler lot. Failure of the trial judge to so instruct the jury was, say appellants, reversible error. The difficulty with appellants' argument on this point is that, in spite of Mrs. Fowler's vigorous insistence to the contrary, this alleged error, as a ground for appeal, was not properly preserved at the trial below for appellate review.

The record shows that immediately after instructing the jury and submitting the issues the trial judge directed Mrs. Fowler and appellee's counsel to approach the bench, whereupon the following proceedings were had out of the hearing of the jury:

> "(The Court) Dictate to the reporter any objections you may have to the instructions.
> "(Mrs. Fowler) The only objection I have is the exclusion of punitive damages."

There then followed further colloquy at the bench between the judge and Mrs. Fowler during which she made no objections to the issues submitted or the instructions given. Nor did she request that they be amended or supplemented in any manner. There being nothing in the record [1] to show that the appellants requested the trial judge to instruct the jury or submit issues on their theory of the case, we are unable to pass upon the correctness of the theory on this appeal. Rules 554 and 560 of the Maryland Rules of Procedure. Moreover, even if we assume that the question were before us we find no merit in the appellants' theory regarding this aspect of the case.

The basis of Benton's alleged fraud consisted of his active misrepresentation of the adequacy of the septic system on the Fowler lot alone. As this Court said in the first appeal (*Fowler v. Benton, supra*, p. 581), *"This assertion by Benton * * * re-*

---

1. There was filed with appellants' brief an affidavit of Mrs. Fowler, joined by Mr. Fowler, in which it is stated that objections were made in chambers to the issues and that instructions were requested consistent with appellants' theory. However, the matter was not certified by the trial judge and a motion to "Correct Omission in Record" was denied by this Court on March 29, 1966. Rule 827.

ferred specifically to the septic tank system actually installed by Benton [italics ours], and was tantamount to an assertion that he, a man of many years' experience as a builder, knew of no reason why the plaintiffs would not find the system 'adequate,' and one of the reasons why they should find it adequate was that it had been approved by the Health Department." As further pointed out in that opinion, the material fact misrepresented by Benton was that the Health Department had approved the installation, when in actuality the system had not been approved with regard to adequacy and capacity for a family of eleven.

Benton was not asked and volunteered no information concerning the septic system on any other lots in the development. Other than his own testimony at the trial that "at times" property owners "in the whole area were having trouble with their septic systems," the evidence does not show precisely what he knew about these other septic systems in February, 1957, when he made his allegedly fraudulent statement. While it may be presumed Benton was aware that the "trouble" on the other lots was overflowing septic systems, there is no evidence that at that time he knew the cause or causes of the trouble, much less that he knew that this cause or these causes also applied to the Fowler septic system. Obviously, there are many reasons why a septic tank system on a particular lot might overflow. The reasons applicable to one lot may be entirely different than those applicable to another. Moreover, there is no expert testimony in the record regarding the precise cause of overflowing on any of the other lots. Under the particular circumstances revealed by the record before us, we agree with the learned trial judge that, as a matter of law, when Benton was asked about the adequacy of the septic system on the Fowler lot he was under no legal[2] duty to disclose that other lot owners were having difficulties with their septic systems. This being so it would have been error to instruct the jury in a manner allowing it to award damages resulting from the faulty septic systems on the neighboring lots. As this Court said in Dorough v. Lockman, 224 Md. 168, 171, "A litigant is entitled to have his theory of the

2. See Walsh v. Edwards, 233 Md. 552, and cases therein cited for full discussion of what constitutes actionable fraud in "nondisclosure" cases.

case presented to the jury only if it is a correct exposition of the law and there is testimony in the case which supports it." In our view the appellants' theory does not meet that test.

The next question presented for our review is this: "Did the lower court err in discussing the law of the case and the prayers, and in formulating the special issues in chambers *without the presence of the court stenographer;* and in allowing discussion at the bench without having it reported by the court stenographer?" (Appellants' italics.)

The record shows that at the close of the evidence, the trial judge invited Mrs. Fowler and appellee's counsel to his chambers to "consider what the Court will instruct the jury as to the law in this case." There is no record of the conference that took place. Obviously, however, instructions were discussed, and at some length, for upon resuming the bench the judge told the jury, "(A)s sometimes happens, we have taken longer than we had anticipated to go over the question of prayers." It then being late in the day the judge recessed court until the next morning at which time, according to the record, the jury was seated and there was a "discussion at the bench off the record." The judge then instructed the jury and submitted the two issues, after which, *before the jury retired to consider its verdict,* the colloquy previously referred to herein took place in which both sides were told *out of the hearing of the jury to* "dictate to the reporter any objections you may have to the instructions."

The practice of court and counsel of informally discussing in chambers proposed prayers and jury instructions is widespread in this state. Nothing in the Maryland Rules prohibits it. Such informal discussion promotes agreement on the law of the case, segregates the points of difference, and tends to limit the issues—all of which has the salutary effect of promoting errorless instructions and more orderly jury arguments on the part of counsel. During the "sifting process" of such discussions it very often happens that opinions initially held concerning the instructions that should be given are revised or abandoned altogether. To require in all cases that a court stenographer be present during the discussion seems to us unnecessary, and in any event a matter properly left to the sound dis-

cretion of the trial judge. So long as the record shows, as it does in this case, that after such discussion in chambers opportunity is given counsel to make their *final* objections on the record, in the manner and at the time required by Rule 554 d, we see nothing wrong with the procedure followed by the trial judge in the case at bar. Especially is this true where, as here, the record fails to disclose that the appellants were in any way prejudiced by the procedure, or that the trial judge abused his discretion in any manner.

As further grounds for their appeal, appellants allege error by the trial judge in numerous rulings on the admissibility of evidence:

1. The trial judge refused to admit evidence, as an element of damages, of appellants' expenses involved in their litigation against the developer of Seabrook Acres and the real estate agent who, in addition to Benton, were originally defendants in this case. Directed verdicts in favor of the developer and the real estate agent were affirmed by this Court in *Fowler v. Benton, supra.* The trial judge also refused to admit evidence of appellants' expenses involved in their litigation against the Board of County Commissioners of Prince George's County. In that case this Court affirmed the action of the trial court in sustaining a demurrer to the declaration (*Fowler v. Bd. of Co. Comm'rs,* 230 Md. 504). In order that expenses of so-called "collateral litigation" be allowed as damages to a plaintiff, "such expenses must be the natural and proximate consequence of the injury complained of and must have been incurred necessarily and in good faith and the amount thereof must be reasonable." 25 C.J.S. *Damages* § 50. In our view the litigation expenses for which appellants claim reimbursement do not meet this test. The trial judge was correct in his ruling.

2. Appellants complain that the lower court "erred in ruling out certain evidence and testimony * * * relating to Kenneth Fowler's arrest, jailing and fine." The appellants' contention here is that Mr. Fowler's "arrest, jailing and fine," on a warrant charging that on January 3, 1958, he violated the state health laws "by failing to correct the overflowing septic system," were caused by Benton's fraud and are proper elements of damages which the jury should have been allowed to con-

sider. Even if we assume, without deciding, that they would be proper elements of damage, the proof was insufficient. The trial judge allowed in evidence, as Plaintiffs' Exhibit No. 10, a "true test copy" of proceedings before a Trial Magistrate for Prince George's County showing Mr. Fowler's arrest on the charge, but as he prayed a jury trial it does not show the outcome of the matter. In admitting the exhibit the judge remarked that it could "be seen by the jury at the proper time," and declined to allow it to be read by a witness on the stand on the ground that "it will speak for itself." The exhibit was never seen by or read to the jury during the trial. During Mr. Fowler's testimony he was asked no questions concerning any aspect of the charge or its outcome. However, a proffer was made of "jail expenses, costs involved in that," but no amounts were mentioned in the proffer and it was not stated in the proffer whether the "jailing" was before or after final disposition of the charge. The judge refused the proffer. After the judge had instructed the jury at the conclusion of the case, he also refused Mrs. Fowler's request to allow the jury to take Plantiffs' Exhibit No. 10 to the jury room. We think both rulings were correct. Except for Mrs. Fowler's statement during one of the numerous colloquies at the bench that "We had a jury trial and they found him guilty" (which of course is not evidence) there is no proof in the record extract showing that Mr. Fowler was ever convicted of the charge. In the absence of such proof, the mere fact that he was arrested on what, so far as the evidence shows, may have been a groundless charge, was immaterial and of no probative value as far as damages in this case are concerned.

3. The trial judge excluded from the evidence any evidence regarding the death of the Fowlers' dog. Mrs. Fowler testified that several months after they moved onto the property the dog became ill and died. As there was no evidence from which the jury could do more than speculate that the faulty septic system caused the dog's death, the judge's action was correct.

4. The trial judge granted appellee's motion to strike out the answer of a medical witness giving his prognosis of Mr. Fowler's illness. At that stage of the case evidence of a causal connection between the illness and the faulty septic system was at most very meager. In any event we find no prejudicial error

in the court's ruling since the witness had already testified, without objection, that Mr. Fowler "will require medical care for an indefinite period of time."

5. "The lower court erred in refusing to allow the pamphlet on amebiasis and the actuarial tables to be admitted into evidence, and in refusing to allow the short film on 'The Life Cycle of Entamoeba Histolytica' to be shown to the jury." We find no reversible error in any of these rulings:

(a) The pamphlet is a "Technical Bulletin" of the Armed Forces on "Amebiasis" describing all forms of the disease, its causes, diagnosis and treatment. In its pertinent parts the pamphlet merely repeated, "in technical English," the information contained in the medical testimony. Its admissibility was clearly within the sound discretion of the court. *Cf.* 31A C.J.S. *Evidence* § 166, *Unnecessary Evidence.*

(b) In view of the jury's answer to special issue No. 2, the rejection of the actuarial tables was not prejudicial—even assuming, without deciding, their admissibility.

(c) The movie film is said to "demonstrate more graphically * * * how this disease invades the human body." If so, our ruling as to (a) above also applies here. See also *State for use of Emerson v. Poe,* 171 Md. 584.

Appellants further contend that the lower court erred in not instructing the jury on the matter of punitive damages. As we have seen, the record shows that appellants objected to this omission before the jury retired, but no grounds for the objection were stated as required by Rule 554 d. The objection is therefore not properly before us for review. Rule 554 e; *Fiege v. Boehm,* 210 Md. 352. However, even if we assume the question to be properly presented, we find no error in the omission.

> "In ordinary cases the recovery of exemplary, punitive, or vindictive damages will not be allowed in an action of deceit; but such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is gross, or the case presents other extraordinary or exceptional circumstances clearly indicating malice and wilfulness and calling for an ex-

tension of the doctrine." *Russell v. Stoops,* 106 Md. 138, 143-44.

This case as presented does not come within any of the exceptions named.

Appellants' final contention on this appeal is that their cause was prejudiced by a certain remark made *out of the presence of the jury* by the trial judge to a medical witness. At the time, the judge was assisting Mrs. Fowler in keeping the doctor present to testify later in the trial. The remark was a veiled reference to the old adage (upon the validity of which we decline comment) that "A person who represents himself has a fool for a client." Appellants claim the remark reflected an "attitude of the judge" which *"might* have been very prejudicial to their case." (Italics ours). We find nothing in the record manifesting an attitude on the part of the judge which resulted in any prejudice to the appellants. No claim is made that the testimony of the doctor or any other witness was in any way affected by the remark, and since the jury did not hear the remark, we rule that it was not prejudicial. Moreover, in his instructions to the jury, the judge, quite properly we think, told the jury that "in this State an individual has a perfect right to represent himself. This is a right afforded to every citizen. If a citizen should elect to try his own case rather than to have some attorney represent them they have a perfect right to do so. The fact that they do retain an attorney or not should not affect your decision in any way in this case. You must weigh and consider this case without regard to sympathy, prejudice or passion for or against any of the parties to this action."

Finding no reversible error in the rulings and instructions of the trial court, we shall affirm the judgment entered on the jury's answers to the special issues submitted.

*Judgment affirmed. Costs to be paid by appellants.*