# EMPIRE REALTY COMPANY, INC.
## ET AL. *v.* FLEISHER ET UX.

[No. 288, September Term, 1972.]

*Decided June 7, 1973.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Nathan Patz,* with whom was *Daniel W. Moylan* on the brief, for appellants.

*James D. Newton,* with whom was *William F. Hickey* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

Appellants, Empire Realty, Inc. (Empire) and the executors of the Estate of Sidney B. Needle (Needle), appeal from a decree in equity for monetary damages in the sum of $19,641.50 entered against them in favor of appellees (the Fleishers) by the Circuit Court for Washington County (McLaughlin, C. J.). The damages were prayed as incidental relief in a suit brought by the Fleishers to set aside a deed purporting to convey certain real property in Washington County to Empire, a company controlled by Needle.[1] The bill of complaint alleged that the deed had been procured by fraud practiced upon the Fleishers by Needle. Finding that those allegations had been sustained, the chancellor set aside the deed upon the condition that within sixty days from the date of the decree, the Fleishers "reimburse and restore to Empire . . . the total amount of disbursements, expenditures or payments" made or incurred by the latter; that sum was to be determined by the court auditor.

Beginning in the late 1940's, Fleisher, who had been engaged in the clothing business in the downtown section of Hagerstown for a number of years, first entertained the notion of building a shopping center on the outskirts of the city. In pursuit of his "impossible dream," he went about purchasing the necessary real estate. During the ensuing years, however, he also "acquired" several judgments and liens, principally because of reversals suffered in the operation of his retail business. By the mid-1960's, the cumulative effect of these obligations had threatened his continued ownership of the property and, thereby, the

---

1. Needle died on April 2, 1971, while the case was still pending in the circuit court and prior to passage of the "Final Decree" from which this appeal is taken.

fulfillment of his long-cherished goal. In addition to the parcel he had assembled by outright purchase, Fleisher also had available to him the remainder of the 6.26 acres required for the shopping center; this was in the form of options to the "Jacobs" and "Masser" tracts held by Michael Callas (Callas), a business associate who was also a contractor and engineer.

Under· great stress from his creditors, especially the holders of the first and second mortgages on the property, Fleisher sought financial backing from several sources in the City of Baltimore. His specific need was sufficient money for construction financing and payment of the liens. While thus engaged, he contacted Needle in the spring of 1967. The latter arranged with one Simon Winer (Winer) to advance the funds necessary for the payment of the existing mortgages and judgments. During this period of negotiations — and for the preceding period of almost two years — Fleisher was represented by Shale D. Stiller, Esquire, of Baltimore. He, Fleisher, Needle, Winer and Callas conferred frequently during the summer of 1967; these discussions led to the execution on September 1, 1967 of a "Memorandum of Understanding" by Fleisher, Empire and Callas. Winer was also expected to sign that document, but did not do so. It called for the following:

1. The formation of a corporation to be known as "Dual Plaza 40 East, Inc.," with Winer, Empire and the Fleishers each to own one-third of its stock.

2. A settlement to be held in the second week of September — subsequently scheduled for September 18, 1967 — at which the Fleishers were to transfer to the corporation their interest in the real estate together with leases obtained from Drug Fair and Acme Markets, Inc.; and at which Callas would transfer to the corporation the Jacobs and Masser options.

3. A loan by Winer to the corporation of "enough money to pay off all existing mortgages on the property and all other liens, including the outstanding judgments against" the Fleishers.

The settlement scheduled for September 18 never took

place because of Winer's absence. By this time, the pressure brought to bear by the mortgagees had intensified, and on October 26, 1967, the Fleishers called on Needle in Baltimore. A meeting was scheduled for the next day at Needle's office, which was also to be attended by Mr. Stiller. What transpired on the 26th and 27th was the subject of sharp dispute at the hearings below. According to Mr. Stiller, whose testimony was accepted by the chancellor, when he arrived for the October 27 meeting, he saw Fleisher enter Needle's office, but he [Mr. Stiller] was ushered out by Needle who stated "that he was going to be taking care of the whole transaction and working out the whole deal." He also assured Mr. Stiller that his long-overdue fee would be paid.

In brief, the Fleishers contended — and the chancellor, in effect, found — that at the October 27 meeting, Needle procured the Fleishers' signatures to the deed and lease assignments, as well as the options from Callas, by fraudulently representing that those documents were intended solely to provide Needle and Empire with collateral security for his payment of the liens and judgments; but that, instead, Needle recorded the deed to Empire and exercised the two options. As we have previously noted, in addition to decreeing that the deed be "set aside and vacated," the chancellor required that Empire be restored to the status quo within sixty days of the decree. He also ordered that the case be set for further hearing on the issue of damages.

Following the hearing on damages, held some months later, the chancellor passed a "Final Decree" whereby, in addition to incorporating the earlier decision regarding the cancellation of the deed, he awarded damages to the Fleishers against appellants in the sum of $19,641.50. It is from the part of the "Final Decree" dealing with damages that this appeal is taken. For different reasons — none of which are relevant here — the parties agree that the determination of fraud and the resulting cancellation of the deed are not before us.

With respect to the damages, the chancellor, in his written opinion, said merely:

"The questions as to damages is a difficult one. The test boring, recording lease, Lawyer's Title, preparation of plans and Mr. Stiller's fee total $9,141.50. . . . The investigation, preparation and trial of the case involved, I would suppose, weeks of hard work by Fleisher's counsel. I further feel that Mr. Robert Frank should be paid for his services. There is a further obligation on the part of the Fleishers to pay Michael Callas. He expended time and money in the preparation of many plans and secured the option from Irene Jacobs, which was so badly needed for the Shopping Center. . . . I believe that both Mr. Frank and Mr. Callas should be paid on a quantum meruit basis. . . . Mr. Fleisher wants to pay his Attorney, Mr. Stiller, who has reduced his fee from $7,500.00 to $4,000.00, regardless of the promise of Mr. Needle. . . .

\* \* \*

"I will, therefore, award damages to the Plaintiffs against both Defendants, Empire Realty Company and Sidney B. Needle, in the amount of $19,641.50, plus costs of court."

As appellants have suggested, the chancellor's itemization of damages might have been explained in greater detail. In certain respects, we are left to speculate on the basis for the total amount. A certain amount, however, is sufficiently clear. Of the $19,641.50 awarded to the Fleishers, the sum of $9,141.50 represents the following expenses claimed by them at the hearing:

| | |
|---|---|
| Attorney fees (Shale D. Stiller, Esquire) | $4,000.00 |
| Recording charges — Acme lease | 1,900.00 |
| Title insurance | 1,675.00 |
| Fox and Associates (various engineering services) | 979.97 |
| Norman S. Earley & Son, Inc. (test borings) | 586.54 |
| | 9,141.51 |

The reasons for which the court awarded the remaining $10,500.00 are left largely to one's imagination. We are told merely that unspecified portions are for payment "to Mr. Robert Frank" (Frank), a Hagerstown real estate agent who apparently devoted his efforts to obtaining prospective tenants for the shopping center; and for Callas who, the chancellor found, "expended time and money in the preparation of many plans and secured the [Jacobs] option." Finally, the undetermined remainder of the $10,500.00 is in payment of trial counsel fees for the prosecution of the instant case. The first two items, pertaining to Frank and Callas, as with virtually the entire first category of damages totalling $9,141.50, were incurred prior to the appearance of Needle; only the unspecified amount allowed for trial counsel is for services rendered after that event.

Appellants maintain that with the exception of the trial counsel fees, and that part of Mr. Stiller's fee, if any, which may be attributable to forming the corporation in early September, all the expenses were incurred prior to the negotiations with Needle. Thus, it is argued, they are not recoverable because reimbursement of previously-contracted expenses is unnecessary to the restoration of the status quo. We think that the pivotal event is the actual commission of the fraud, which was fixed by the testimony as having occurred on October 27, 1967, and not when Needle initially entered the picture. This was the occasion on which the deed, together with the transfer of the leases and options, was signed; when Needle represented that he would merely hold those documents; when he concealed his intentions from Mr. Stiller; and it is clearly the date on which the chancellor found Needle's deception to have been committed.

Thus, we see two issues that are presented by this appeal: (1) whether those expenses which were incurred prior to October 27, 1967 may be recovered; and (2) whether fees for Fleisher's counsel rendered in the trial of the instant case are a proper element of damages.

(1)

As we have already stressed, the only expense on the

entire list of damages awarded by the chancellor that was incurred subsequently to October 27 — the date on which the fraud was committed — was for the legal services rendered in the trial of this case. We shall consider that portion of the damages later in this opinion. Clearly, the expenses incurred prior to October 27 should not have been allowed as damages, since they could not possibly have been the result of any conduct occurring on that date.

It is the general rule that one may recover only those damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the injury, *Plank v. Summers*, 205 Md. 598, 109 A. 2d 914 (1954); *Riley v. Naylor*, 179 Md. 1, 16 A. 2d 857 (1940); *see McAlister v. Carl*, 233 Md. 446, 197 A. 2d 140, 15 A.L.R.3rd 496 (1964). This principle is equally apposite here. One suing for fraud or deceit must establish that he sustained damage *by reason of the fraud*, and that his injury was the natural and proximate consequence of his reliance on the fraudulent act, *Russell v. Stoops*, 106 Md. 138, 66 A. 698 (1907); *Weaver v. Shriver*, 79 Md. 530, 30 A. 189 (1894); *cf. Fowler v. Benton*, 245 Md. 540, 226 A. 2d 556 (1967).

Appellees address themselves to this proposition by arguing that "Maryland has adopted a flexible approach to the award of damages in fraud cases," for which they cite *Downs v. Reighard*, 265 Md. 344, 289 A. 2d 299 (1972) and *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 278 A. 2d 42 (1971). While we did approve in those cases the flexible approach to damages for fraud and deceit, that doctrine applies only to the *measure* of damages, i.e., whether one may recover the "benefit of his bargain" or is restricted to his "out of pocket" losses. It does not refer to *liability* for damages, with respect to which the rule mentioned earlier is controlling. It is aptly stated in 37 Am. Jur. 2d, *Fraud and Deceit*, § 293:

"In order to maintain an action for fraud and deceit, it is generally held to be necessary that the fraud be the real, direct, proximate, and immediate cause of the injury or damage. In other words, to sustain an action for deceit, the fraud and injury

must be connected and must bear to each other the relation of cause and effect."

Such a relation clearly did not exist between the fraudulent act and the alleged damages in this case.

There is no merit in appellees' argument that their expenses, even though incurred well before October 27, were nevertheless the proximate result of the fraud. They bottom this contention on the theory that had there been no fraud, Fleisher would have utilized the services for which the expenses were incurred in his own development of the shopping center. The patent defect in this argument is the absence of any proof that, but for Needle's conduct, Fleisher, as of October 27, 1967, would *probably* have succeeded in developing the shopping center under his own aegis; and that he would thereby have recouped the expenses.

In sum, appellees have failed to establish by any theory that the damages incurred prior to October 27, 1967 were the natural and proximate consequence of their reliance on the fraudulent act, *Russell v. Stoops; Weaver v. Shriver,* both *supra.*

### (2)

We turn then to the remaining item of damages, the unspecified fee to Fleisher's trial counsel for prosecuting this case in the circuit court. In this regard, the chancellor merely said:

"The investigation, preparation and trial of the case involved, I would suppose, weeks of hard work by Fleisher's counsel. Mr. Needle made it necessary for Mr. Fleisher to bring suit for redress of the wrong done him and he should be awarded an amount to pay his counsel."

The general rule is that, other than usual and ordinary court costs, the expenses of litigation — including legal fees incurred by the successful party — are not recoverable in an action for damages, *Freedman v. Seidler,* 233 Md. 39, 47, 194 A. 2d 778 (1963); *Harry's Tavern, Inc. v. Pitarra,* 224 Md. 56, 63, 166 A. 2d 908 (1961); *McGaw v. Acker, Merrall & C. Co.,*

111 Md. 153, 160, 73 A. 731 (1909); 1 Sedgwick, *Damages,* § 229 (9th ed. 1912). No attorney fee is ever included in the taxed costs, excepting the appearance fee, unless there is a special statute authorizing it, *Hamilton v. Trundle,* 100 Md. 276, 59 A. 719 (1905). And, in the absence of special circumstances, as where the parties to a contract agree on the payment of attorney's fees, *Webster v. People's Loan, Savings & Deposit Bank,* 160 Md. 57, 152 A. 815 (1931), or a statutory requirement, counsel fees are not a proper element of damages, *Freedman v. Seidler, supra; Rhodes Hardwood v. Blue Ridge,* 225 Md. 158, 169 A. 2d 399 (1961); *Harry's Tavern, Inc. v. Pitarra, supra; cf. Marney v. Stack,* 261 Md. 78, 273 A. 2d 426 (1971).

This Court has upheld the award of legal fees in separate litigation against another party caused by the wrongful acts of the defendant, *McGaw v. Acker, Merrall & C. Co., supra,* at 160; *cf. Fowler v. Benton, supra,* at 550. Here, however, we are concerned with the question whether fees may be allowed for legal services rendered in the *instant* litigation. The principle was succinctly stated by our predecessors in *Rice v. Biltmore Apartments Co.,* 141 Md. 507, 516-17, 119 A. 364 (1922):

> "Whatever may be the law elsewhere, it has long been the settled law of this State that, in the absence of some *statutory provision,* a successful litigant is not entitled to recover the fees paid by him to attorneys for prosecuting the litigation." (emphasis added).

Manifestly, there is no statutory authority to support the award made here.

Nor does the record in this case reflect such "special circumstances" as would justify the payment of legal fees, *Freedman v. Seidler* and *Webster v. People's Loan, Savings & Deposit Bank,* both *supra.*

The Fleishers apparently reason that fraud alone is sufficient to establish "special circumstances." We have found no prior decision of this Court which has considered the allowance of attorney's fees for the prosecution of an

action grounded on fraud. In a variety of other cases, however, it has been held that counsel fees are not a proper element of damages.[2]

In urging that the fraud is sufficient per se to bring them within the ambit of "special circumstances," appellees rely upon two authorities. The first is *Schmidt v. Chambers*, 265 Md. 9, 288 A. 2d 356 (1972), a case in which attorney's fees were sought for conducting litigation against a testamentary trustee who was there found to have been enmeshed in a conflict of interests. Appellees seize upon the following dictum in that case:

> "If Chambers had been *guilty of fraud*, bad faith or had instituted frivolous litigation without justification, then *there might have been* some merit to the appellants' demands that he make payment for attorney's fees, etc., however, the lower court found that this was not the case and we see no reason to disturb its ruling. See *Sinclair Estates v. Guthrie*, 223 Md. 572, 575, 165 A. 2d 775 (1960); *McGaw v. Acker, Merrall & C. Co.*, [*supra*]." 265 Md. at 40 (emphasis added).

Neither of the two cases there cited, one of which, *McGaw, supra*, we referred to earlier, is authority for the award of counsel fees in a fraud action. We might note that here we are not concerned with a wrong resulting from a breach of trust or confidence, since Needle occupied no such position in relation to the Fleishers.

The other case on which appellees rely heavily for their argument, *Schlein v. Smith*, 160 F. 2d 22 (D.C. Cir. 1947), is plainly distinguishable from the case at bar. There, an "unlettered" woman was defrauded of her dwelling by a

---

**2.** Freedman v. Seidler, *supra* (breach of contract); Rhodes Hardwood v. Blue Ridge, *supra* (vacate wrongful attachment); Harry's Tavern, Inc. v. Pitarra, *supra* (breach of contract); Rice v. Biltmore Apartments Co., *supra* (eviction of a tenant from the leased premises); Hollander v. Central Metal Co., 109 Md. 131, 71 A. 442 (1908) (fee for examination of title); Hamilton v. Trundle, *supra* (fees incurred by legatees contesting a provision of a will); Wood v. State, Use of White, 66 Md. 61, 5 A. 476 (1886) (procuring a dissolution of an injunction).

scheme which the court aptly characterized as a "sordid story of usury and fraud." In upholding the award of counsel fees to her, the court said:

" . . . We regard the fraud revealed by the record as *gross* in nature, practiced wilfully and oppressively upon untutored trusting victims who were long ignorant of their rights and but vaguely conscious of their wrongs. In such circumstances, *it was proper to award counsel fees, under the rule concerning punitive damages* stated in 8 R.C.L. 585, which we quoted with approval in Ballard v. Spruill, 64 App. D.C. 60, 74 F. 2d 464, 466:

" ' To warrant the allowance of such damages the act complained of *must not only be unlawful but must also partake somewhat of a criminal or wanton nature.* And so it is an almost universally recognized rule that such damages may be recovered in cases, and only in such cases where the wrongful action complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or *gross fraud* on the part of the defendant.' " 160 F. 2d at 25 (emphasis added).

We observe, contrary to appellees' argument, that here the chancellor made no mention of "gross fraud" in either of his opinions; nor is there a basis for inferring that conclusion from his findings. Moreover, there is no such allegation in the bill of complaint.

The allowance of legal fees within the framework of punitive damages is vastly different from the issue we consider here. For a collection of cases dealing with this question, see Annot., 30 A.L.R.3d 1443 (1970). In *Fowler v. Benton, supra,* we said, quoting from *Russell v. Stoops, supra:*

" 'In ordinary cases the recovery of exemplary, *punitive,* or vindictive *damages will not be allowed in an action of deceit;* but such damages may be

> allowed where the wrong involves some violation of duty springing from a relation of trust or confidence, or where the fraud is *gross,* or the case presents other extraordinary or exceptional circumstances clearly indicating malice and wilfulness and calling for an extension of the doctrine.' " 245 Md. at 552-53 (emphasis added).

As we have already indicated, none of those exceptions is applicable here. We note that appellees neither alleged facts that would have supported an award of punitive damages, nor prayed for them; perhaps because they were mindful of our prior holdings that, absent statutory authorization, a court of equity may not award punitive damages, *Prucha v. Weiss,* 233 Md. 479, 197 A. 2d 253 (1964), *cert. denied* 377 U. S. 992, 84 S. Ct. 1916, 12 L. Ed. 2d 1045 (1964); *Superior Construction Co. v. Elmo,* 204 Md. 1, 22, 104 A. 2d 581 (1954).

In a final effort to persuade us that they have established "special circumstances," appellees cite *Cohen v. Am. Home Assurance Co.,* 255 Md. 334, 363, 258 A. 2d 225 (1969). We find no support for their position in that case. There, a declaratory judgment proceeding was brought to determine whether coverage was afforded by an insurance policy. The insurer had declined to defend the insured, but we affirmed a decision requiring it to do so. We were also called upon to decide the question of whether counsel fees for bringing the declaratory judgment proceeding could be awarded to the insured. The insurance policy required the company " 'to reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request.' " Judge Smith, after reviewing a number of authorities from other states and noting that there was a division of authority, said for this Court:

> "American Home produced the current situation when it refused to defend its assured. Accordingly, whether one speaks in terms of its having *authorized* the expenditure by its failure to defend or whether one speaks in terms of the attorney's

fees for the declaratory judgment action being a part of the damages sustained by the insured by American Home's wrongful *breach of the contract,* we hold American Home bound to pay the fees incurred by Mrs. Brown in bringing the declaratory judgment action to establish that American Home had not done that which it had agreed with her to do." 255 Md. at 363 (emphasis added).

We find nothing in this case comparable to the facts in *Cohen* and thus regard the latter as clearly inapposite to the case at bar.

While we are unwilling to say what nature of fraud, if any, might constitute the "special circumstances" necessary to permit an award of counsel fees, we are persuaded that it was not established here. Thus it was error to include, in the damage award to appellees, counsel fees for prosecuting this case in the circuit court.

Although the judgment for damages must be reversed in its entirety, we shall remand the case only for such further proceedings as may be required in connection with the cancellation of the deed.

> *Judgment for damages reversed; remanded for further proceedings not inconsistent with this opinion; appellees to pay costs.*