469 A.2d 454

**James H. CRAWFORD**

v.

**Douglas B. MINDEL et al.**

**No. 251, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Jan. 9, 1984.

112

114

**116**

Joseph W. Powers, Jr., Rockville, for appellant.

M. Wayne Munday, Mudd, Mudd & Munday, P.A., La Plata, and James H. Daly, La Plata, on the brief, for appellees.

Argued before LISS, GARRITY and BLOOM, JJ.

LISS, Judge.

On September 14, 1981, Douglas B. Mindel, Ernest H. Blankenship and Tasco, Inc., the appellees herein, filed a declaration in the Circuit Court for Charles County against James H. Crawford, the appellant. In their suit the appellees alleged unlawful, wrongful and unauthorized actions by the appellant in an effort to gain control of Tasco, Inc., a body corporate of the State of Maryland. Appellees sought declaratory and injunctive relief, and compensatory and punitive damages against the appellant.

By agreement the case was bifurcated, heard initially on the issue of liability, and thereafter on the issue of damages. At the conclusion of the trial on liability the trial court found that the appellant's actions amounted to an illegal and fraudulent attempt to gain control of Tasco, Inc. The trial judge granted declaratory and injunctive relief but reserved his finding on the question of malice. At the conclusion of the trial on the issue of damages the court held that all appellees had suffered damages and concluded that Crawford's actions which resulted in the termination of Mindel's

and Blankenship's interests in Tasco, Inc. had been malicious.

On October 15, 1982, judgment was entered in favor of appellee Mindel for $7,744.70 compensatory damages and $5,000.00 punitive damages; in favor of appellee Blankenship for $5,881.08 compensatory damages and $5,000.00 punitive damages; and in favor of appellee Tasco, Inc. for $114,905.69, with costs to be paid by the appellant.

Appellant entered a timely appeal and has raised the following issues to be determined:

I. Was the trial court's finding of fraud in appellant's attempted take-over of Tasco, Inc. clearly erroneous?

II. Was the court required to enunciate the standard of proof which it applied?

III. Was the award of compensatory damages proper under the facts found by the trial court?

IV. Was the award of attorney's and auditor's fees legally correct?

V. Was the award of punitive damages permissible in light of the factual and legal conclusions of the trial judge?

VI. Did the court properly award damages for lost wages?

Tasco, Inc., a Maryland corporation, was chartered in 1971. By its terms the charter permitted issuance by the corporation of a maximum number of 500 shares of common stock. The initial issuance of shares was to Ken Der, Ernest H. Blankenship and Donald Hancock; one hundred and fifty shares each.

In 1975, James H. Crawford became a shareholder and the distribution of shares was modified so that Der, Blankenship, Hancock and Crawford had one hundred and thirteen shares each. By an agreement dated February 19, 1980, the corporation bought back all of Ken Der's shares. By an agreement dated May 7, 1980, the corporation bought back all of Donald Hancock's shares.

On August 11, 1980, Douglas B. Mindel purchased fifty-seven shares and acquired the right, by agreement, to purchase an additional fifty-six shares, so that at that time the shareholders were Crawford and Blankenship with one hundred and thirteen shares each and Mindel with fifty-seven shares and contract rights to purchase another fifty-six shares.

Sometime after Mindel's purchase of stock in August of 1980 there was a shareholder's meeting at which all three shareholders were elected as members of the board of directors and officers (Blankenship—President, Mindel—Vice President, Crawford—Secretary/Treasurer and chairman of the board of directors) of the corporation. This remained the management structure of the corporation until the events of August, 1981 out of which the lawsuit in question arose.

On August 12, 1981, Mindel and Blankenship, at an officers' meeting, presented a memorandum to Crawford dated August 10, 1981, which detailed several problems they perceived, including Crawford's failure to attend properly to corporation business, his abuse of corporate credit cards and his failure to put in a full work week. Appellant's response was to call a director's meeting scheduled at an attorney's office the next day. Only appellee Blankenship received notice of the meeting. On the morning of August 13, 1981, appellees Mindel and Blankenship appeared at the offices of attorney Joseph Kneib, intending to participate in the meeting of the directors. On arriving they noticed appellant's automobile parked outside Mr. Kneib's office; however, after waiting they were finally informed, by telephone, that appellant would not be available.

On August 14, 1981, appellant conducted a board of directors meeting, without Mindel and Blankenship. Only Crawford himself and Ken Der (an earlier shareholder whose stock had been purchased by the corporation) were present. It was appellant's contention that the presence of himself and Ken Der constituted a proper quorum.

Appellant proceeded to authorize the purchase of one hundred and sixty-one shares of additional stock to be issued by the corporation to himself, thus claiming ownership of a majority of the outstanding shares of common stock of the corporation. He removed appellees Mindel and Blankenship as both directors and officers and elected Edward J. Miller as vice president and to the board of directors along with appellant's wife. Appellant then terminated the employment of Mindel and Blankenship.

After the trial on the liability portion of the case appellees Mindel and Blankenship were declared to be directors and officers of the corporation. On November 4, 1981, appellees returned to control of the corporation and removed appellant as a director and officer. Upon their return, when appellees discovered that financial records and corporate funds were missing, an audit was ordered. The audit revealed that over $97,000.00 had been deposited in two new bank accounts, then paid out to appellant Crawford, Edward Miller and other noncorporate beneficiaries. The audit also revealed other questionable disbursements from the corporation. On the basis of the audit the trial judge entered judgment in favor of Tasco, Inc.

## I.

The elements of actionable fraud as enunciated by the Court of Appeals in *James v. Weisheit,* 279 Md. 41, 44, 367 A.2d 482 (1977), are as follows:

(1) that a representation made by the respondent was false; (2) that its falsity was known to him; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff not only relied upon the misrepresentation, but had the right to do so and would not have done the thing from which the damage resulted if it had not been made; and (5) that the plaintiff suffered damage (meaning an injury subject to being redressed by compensatory damages) directly resulting from the respondent's misrepresentation. [Footnote omitted]. [Citations omitted].

*See also Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534 (1982).

■ Appellant argues that appellees have failed to prove reliance, one of the key elements for relief against fraud. *Savings Banks Retirement System v. Clarke,* 258 Md. 501, 503, 265 A.2d 921 (1970). In the absence of a fiduciary relationship, fraud is never presumed but must be proved. *Bathan v. U.S.,* 173 F.2d 953 (4th Cir.1949). An officer and director of a corporation, as a matter of law, occupies a fiduciary relationship as regards the corporation. *Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 215, 339 A.2d 664 (1975); *Waller v. Waller,* 187 Md. 185, 194, 49 A.2d 449 (1946).

■ Although a party is usually required to exercise ordinary diligence to discover fraudulent conduct of the opposite party, different standards are applied where fiduciaries are involved. *Merchants Mortgage Co. v. Lubow, supra.* Where a fiduciary relationship exists, fraud may be presumed. *See Republic Realty Co. v. Phoenix Savings and Loan Ass'n.,* 250 Md. 549, 558, 243 A.2d 858 (1968).

Fraud is a generic term and in equity embraces "all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another or by which an undue and unconscientious advantage is taken or another." [Citation omitted]. It is not necessarily a single fact but a conclusion which is drawn from all the circumstances of the case [citation omitted], and includes constructive as well as actual fraud. [Citation omitted]. It taints and vitiates all that it touches. [Citation omitted]. This is especially true when the victim occupies a position of confidence and trust with the perpetrator of the fraud.... *Green v. Lombard,* 28 Md.App. 1, 12, 343 A.2d 905 (1975).

■ Based on the fiduciary duty appellant Crawford owed to the corporation and the individual appellees, his conduct may be categorized as a classic example of construc-

tive fraud, which usually arises from a breach of duty where a relationship of trust and confidence exists. *See Scheve v. McPherson,* 44 Md.App. 398, 408 A.2d 1071 (1979). Where, as in this case, a party is justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare, constructive fraud may be found to arise from a violation of this belief. *Midler v. Shapiro,* 33 Md.App. 264, 364 A.2d 99 (1976).

The trial judge had evidence before him which, if believed, established that appellant had purchased one hundred and sixty-one shares of stock from Tasco, Inc. at substantially below market value, and that the purchase had been authorized by an illegally constituted board of directors of the corporation acting without the prior notice required by law having been given to the stockholders of the corporation. In addition, the judge had before him evidence, if believed, that appellant had received substantial amounts of funds, without proper documentation or authorization. Even if we accept, *arguendo,* that it is necessary that appellees establish reliance on the acts of the appellant, that requirement is found in the fraudulent disbursement of corporate funds to the detriment of the appellees and the sale of the corporate stock at a price substantially below its value. We find no merit in appellant's contention on this issue.

## II.

Appellant next contends that the trial judge erred in that he applied an incorrect standard of proof required to be met by the appellees in order to establish fraud. Appellant argues that the standard should have been clear and convincing proof and that the trial court instead applied a mere preponderance of the evidence test. We have carefully read the record extract and nowhere do we find anything to substantiate appellant's bald assertion. The appellees acknowledge that Maryland has a clear and convincing standard of proof as a requirement in a civil action for fraud,

but in a trial without a jury the trial judge is not required to enunciate the standard which he is applying. In a similar situation this Court said, in *Aeropesca Ltd. v. Butler Aviation International, Inc.,* 44 Md.App. 610, 624, 411 A.2d 1055 (1980):

> While the judge did not articulate that he was applying the "clear and convincing standard" *vis-a-vis* that of "preponderance of evidence" there was no requirement that he do so. "Judges," we said in *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583, 587–88 (1976), "are presumed to know the law. [Citations omitted]. Absent an indication to the contrary, we must assume that judges apply the law correctly to the case before them."

### III.

Appellant argues that the trial judge erred in awarding compensatory damages to Tasco, Inc. because the court did not require proof of the actual loss suffered by the corporation. We do not agree.

One suing for fraud or deceit must establish that he sustained damage by reason of the fraud, and that his injury was the natural and proximate consequence of his reliance on the fraudulent act. The fraud and the injury must be connected and must bear to each other the relation of cause and effect. *Empire Realty Co., Inc. v. Fleisher,* 269 Md. 278, 284–85, 305 A.2d 144 (1973). Appellant argues that appellee corporation failed in its burden of proof to establish that the $96,085.69 represented a loss to the corporation. It is his contention that there was no evidence that the funds disbursed were not for legitimate Tasco, Inc. obligations. The independent auditor testified that he had traced the funds through the checks of customers of the corporation to two accounts established by appellant. These funds were then disbursed to appellant and his associates. The auditor found no documentation to support or authorize these disbursements, such as would exist for legitimate obligations. Moreover, he testified that there was no record on the

corporation's balance sheet for the time period in question indicating corporate liability to the persons who received funds. The evidence was more than sufficient to establish that the corporation would have had the funds in question in legitimate Tasco, Inc. accounts to be used for legitimate corporate purposes but for the actions of appellant.

There was substantial evidence before the trial judge that the disputed disbursements made by the corporation in the period in controversy were not for corporate obligations. The expert witness, the auditor, was permitted to give his opinion that the corporate records did not support authorization for the disbursements and that there was nothing in the corporate records which indicated that the payments made to appellant, his brother Joseph Crawford or Edward J. Miller were for corporate obligations to any of them. Appellant offered no credible evidence to explain the disbursements and the judge concluded that Tasco, Inc. had shown by a preponderance of the evidence that it had suffered damages by the actions of the appellant. We find nothing in the record to indicate that the court was clearly erroneous in its conclusions. Maryland Rule 1086. Furthermore, we agree with the court that the appellee Tasco, Inc. offered sufficient evidence to establish the extent of its damages with reasonable certainty and without the necessity to rely upon speculation or conjecture. *Aeropesca Ltd. v. Butler Aviation International, Inc., supra.*

## IV.

Appellant next complains that the trial court erred in awarding counsel fees in the amount of $9,820.00 to Tasco, Inc.[1] without requiring that a proper foundation be laid to establish the furnishing of the legal services and the reasonableness of the charges made. He also argues to the same

---

1. Initially the court awarded $10,320 as counsel fees to the individual appellees. This award was later modified and thereby made payable to the corporate appellee, Tasco, Inc. in the amount of $9,820.00; the court, on considering a motion for modification, having determined that $500.00 was paid by appellees other than Tasco, Inc.

effect regarding the allowance for auditor's fees made to Tasco, Inc. We agree with appellant's contention as to the award for legal fees but disagree as to the amount for auditor's services.

■ In the absence of the establishment of an adequate foundation for the legal services rendered to Tasco, Inc. by counsel in this case, the award was speculative and conjectural and not proved with reasonable certainty. *See Charles County Broadcasting Co., Inc. v. Meares*, 270 Md. 321, 311 A.2d 27 (1973).

The only reference to the counsel fee found in the record extract was in Mindel's response to appellee's attorney's question, when Mindel was asked "anything else?" After objection was overruled, appellee answered, "legal fees for the fine work you have been doing for us, Mr. Munday." There was no bill submitted, no exposition of the services rendered, the charges made, or their reasonableness. The sole statement in evidence referred to the sum claimed by counsel for services rendered.

■ We conclude the situation is different as to the services rendered by the auditor. The damage trial was heard some ten months after the bifurcated liability trial. At the conclusion of the liability portion of the trial the court restored the appellees to their positions as directors and officers of Tasco, Inc. The audit was needed to determine the financial status of the corporation following the period when it was under the wrongful control of the appellant from August to November of 1981. A representative of the firm selected to make the audit appeared in court and testified as to the services rendered and the charges submitted in the amount of $9,000.00. Appellant raises the issue whether some of these charges were not incurred as incidental expenses concerning other civil litigation pending between appellant and appellees at the same time and should therefore not be chargeable in this proceeding. The record makes it clear, however, that while some of the information developed as a result of the audit was used as a

basis for the subsequent civil action against appellant and others on the claim of a civil conspiracy, the audit was completed and the final report submitted before any subsequent action was filed against the appellant. No additional auditing effort was made after the original audit and no charge was made for any additional auditor's services. We are advised that the civil conspiracy suit against appellant was eventually dismissed by the appellees.

Clearly this auditor's fee was the direct consequence of appellant's illegal acts, required for assessment of damages, needed to continue managing the corporation and properly authorized by the legally constituted board of directors of appellee Tasco, Inc.

■ We conclude that there was sufficient evidence before the trial court to justify the allowance of auditor's fees and that the evidence established the services rendered and their value with sufficient particularity to justify the amount allowed.

"The general rule is that, other than usual and ordinary court costs, the expenses of litigation, including legal fees incurred by the successful party, are not recoverable in an action for damages." *Empire Realty Co., Inc. v. Fleisher, supra,* 269 Md. at 285, 305 A.2d 144.

In awarding counsel fees the trial court referred to the *Empire* case, *supra,* at 288–89, 305 A.2d 144, which reiterates the Maryland law regarding attorney fees within the framework of punitive damages:

In ordinary cases the recovery of exemplary, punitive, or vindictive damages will not be allowed in an action for deceit; *but such damages may be allowed where the wrong involves some violation of duty springing from a relation of trust or confidence,* or where the fraud is gross, or the case presents other extraordinary circumstances clearly indicating malice and willfulness and calling for an extension of the doctrine. [Emphasis deleted]. [Emphasis added].

**126**

 In the instant case the trial court concluded that:

> ... the defendant, an officer and director of the plaintiff corporation, fraudulently attempted to gain control of the corporation and to divest the individual plaintiffs of their interest. It is felt that these actions present special circumstances sufficient to warrant an award of counsel fees to the plaintiffs.

We agree with this conclusion of the trial judge, but, where awarded, the allowance made must not be speculative or arbitrary and must be proved with reasonable certainty. *Charles County Broadcasting Co., Inc. v. Meares, supra.* We shall vacate the award of counsel fees made by the trial judge and shall remand for further proof of the services rendered and the reasonableness of the charges made therefor.

## V.

 Appellees Mindel and Blankenship were awarded punitive damages of $5,000.00 each. Appellant contends that the bifurcated nature of the trial and the intervening period of time (ten months) somehow made the award of punitive damages improper. He suggests that the court should have made a ruling on the issue of malice before the hearing on damages, apparently considering malice and liability interchangeable in this proceeding. Malice is not, however, an element of or prerequisite to liability in this case, but only an alternative requirement for an award of punitive damages after liability has been determined. To recover punitive damages in actions for fraud, an element of aggravation, evidenced by malicious, deliberate, gross or wanton conduct must accompany the fraud. *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 530–31, 366 A.2d 7 (1976).

 At the conclusion of the liability portion of the trial the trial judge reserved a ruling on the issue of malice although the court made it clear that if it found either actual or implied malice it might award punitive damages. Appellant made no objection to the court's reservation on the issue of punitive damages until the damage portion of

the trial, when appellant argued that the facts did not support the award of punitive damages but chose to offer no testimony. The trial judge decided that punitive damages should be awarded on the basis of implied malice as evidenced by deliberate, gross, or wanton conduct. *See Wedeman v. City Chevrolet Co., supra; National Micrographics Systems, Inc. v. OCE-Industries, Inc.,* 55 Md.App. 526, 465 A.2d 862 (1983). That the court gave proper consideration to defense counsel's argument is evidenced by the fact that punitive damages were awarded only to appellees Mindel and Blankenship and not to the corporation.

 Finally, appellant argues that punitive damages should not have been allowed because appellees presented no evidence of the pecuniary circumstances of the appellant. While we agree that it is proper for the court to consider the pecuniary circumstances of the defendant before imposing exemplary damages to punish a defendant for a wrong, [*see, e.g., Derby v. Jenkins,* 32 Md.App. 386, 363 A.2d 967 (1975) ], we conclude that there was ample evidence before the trial judge from which he could and did determine that the judgments for exemplary damages were well within the pecuniary ability of the defendant to pay. We find no abuse of discretion.

## VI.

 Finally, appellant urges that Mindel and Blankenship were not entitled to awards for lost wages because there was testimony that their respective incomes for the year 1981 were greater than for the previous year.

We do not accept this argument. The record discloses that Mindel and Blankenship were fraudulently terminated as employees of Tasco, Inc. for a period of ten and eight weeks, respectively. Mindel lost salary totaling $7,744.00; Blankenship, $5,881.08. The losses were the direct consequence of appellant's fraudulent and unlawful attempt to seize control of Tasco, Inc. The trial court ruled correctly

that the appellees were entitled to reimbursement for the salary of which they had been improperly deprived.

JUDGMENTS IN FAVOR OF MINDEL AFFIRMED, JUDGMENTS IN FAVOR OF BLANKENSHIP AFFIRMED, JUDGMENT IN FAVOR OF TASCO, INC., AFFIRMED IN AMOUNT OF $105,085.69, EXCLUDING COUNSEL FEE OF $9,820.00, REMANDED FOR FURTHER HEARING ON ALLOWANCE OF AMOUNT OF COUNSEL FEE, JUDGMENT FOR COSTS AGAINST APPELLANT.