**MARINE MIDLAND BANK, N.A., Appellee,**

v.

**John K. KILBANE, Appellant.**

No. 83–2087.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1984.

Decided July 25, 1984.

Douglas M. Bregman, Bethesda, Md., for appellant.

Jordan M. Spivok, Rockville, Md. (Protas, Kay, Spivok & Protas, Chartered, Rockville, Md., on brief), for appellee.

Before WIDENER, HALL and MURNAGHAN, Circuit Judges.

K.K. HALL, Circuit Judge:

John H. Kilbane appeals from an order of the district court, 567 F.Supp. 1475, granting summary judgment for Marine

Midland Bank (the "Bank") in this diversity action for breach of and default under a guaranty. We affirm.

## I.

On July 23, 1976, Robert Burke ("Mr. Burke") signed a promissory note payable to the order of the Bank in the sum of $50,000. Payment of this obligation was guaranteed by Howard Greason, Mr. Burke's father-in-law. On August 2, 1976, Kilbane executed and delivered to the Bank a guaranty under which he agreed to guarantee "any and all indebtedness" of Mr. Burke, "whether now existing or hereafter incurred ... to the extent of Fifty Thousand Dollars."

Subsequently, Mr. Burke signed a series of promissory notes payable to the order of the Bank. The notes were periodically renewed and were eventually consolidated into two demand notes. The first, dated September 27, 1978, was in the amount of $250,000 and was signed on December 21, 1978, by Mr. Burke and his wife, Doris Burke ("Mrs. Burke"). The second, dated December 5, 1978, was in the amount of $50,000 and was also signed by Mr. and Mrs. Burke.

In July, 1980, the Bank demanded payment on its notes and the Burkes defaulted. In January, 1981, the Bank obtained a judgment against Mr. Burke in the sum of $307,638.83, in New York state court. Later that year, Mr. Burke filed a petition in bankruptcy and listed the Bank as an unsecured judgment creditor. Subsequently, the Bank sought to collect from Kilbane and Mrs. Burke for their respective obligations. Greason, who was also a guarantor, had died in October, 1978.

The Bank brought a civil action against Mrs. Burke in Florida state court.[1] Mrs. Burke filed a counterclaim against the Bank predicated on a check for $50,000 which she had given the Bank in her capacity as the personal representative of the Greason estate. The case was settled and the Florida state court ordered that the case file be sealed and that the terms of the settlement remain undisclosed to the public.

After issuing several demands that Kilbane pay the Bank pursuant to his guaranty, the Bank brought this diversity action in federal district court, seeking the full amount of Kilbane's guaranty of $50,000, plus costs and expenses as set forth in the terms of the guaranty. Each side participated in pre-trial discovery, and cross-motions for summary judgment were filed. As grounds for his motion for summary judgment, Kilbane argued that he was released from any obligation he may have had under his guaranty when the Bank entered into its settlement agreement with Mrs. Burke.[2]

The district court reserved ruling on the cross-motions for summary judgment until it could determine whether the Bank had reserved its rights against Kilbane in its settlement with Mrs. Burke. Accordingly, the court entered an order directing the Florida state court to send to it the settlement agreement.

On June 27, 1983, Kilbane received a copy of the settlement agreement, which included two releases. Under the first release, dated May 28, 1982, the Bank relinquished all of its claims against Mrs. Burke for $55,000. The Bank expressly reserved its right to all actions and claims it had or which would accrue to it against any other obligors. Under the second release, dated June 15, 1982, Mrs. Burke released the Bank from any claim she might have against it as a beneficiary or representative of the Greason estate.

---

1. *Marine Midland Bank, N.A. v. Burke,* No. 80–19840 (Cir.Ct., Broward Cnty., Fla. June 17, 1982).

2. Kilbane also contended that his guaranty was void for failure to comply with the Statute of Frauds because the titles of the Bank officers authorized to accept Kilbane's discontinuance of the guaranty were not filled in on the guaranty. Kilbane further contended that, if the guaranty were not void, it extended only to the July 23, 1976, promissory note. The district court disposed of these contentions as "unmeritorious" on June 7, 1983.

After receiving these documents, Kilbane learned for the first time that on December 21, 1978, Mrs. Burke, as the personal representative of the Greason estate, had tendered to the Bank a $50,000 check bearing the handwritten notation: "Balance of loan due." Thereafter, Kilbane sent a letter to the district court in which he requested (1) that he be afforded "a reasonable opportunity to investigate the circumstances surrounding the ... negotiation of [both] the [Greason] check" and the settlement agreement between Mrs. Burke and the Bank, and (2) that the district court order the Florida state court to provide the case file in the suit against Mrs. Burke.

On July 27, 1983, the district judge entered another order stating that the first release executed by Mrs. Burke and the Bank established that the Bank had not released Kilbane from his guaranty. The order granted the Bank's motion for summary judgment and denied Kilbane's request for additional discovery, noting that there was "absolutely no indication that the [Greason] check [was] relevant to the instant suit," that the resolution of the case did not require the file in the Florida case, and that Kilbane had already been given adequate time for discovery. Kilbane appeals.

## II.

Appellant's central contention is that because the payments made to the Bank by Mrs. Burke and the Greason estate "may have" extinguished the Burkes' indebtedness, and thereby released Kilbane of any obligations under his guaranty, the district court erred in granting the Bank's motion for summary judgment.[3] We disagree.

■ We find no merit to Kilbane's contention that Mrs. Burke's settlement with the Bank following the Florida court action may have been in full satisfaction of the Burkes' obligation. Kilbane presented no evidence in support of this claim. More-

over, the first release specifically states that it "reserves any and all rights, claims, demands, damages, causes of action or suits that said releasor [the Bank] might now have or might subsequently accrue to it against any other obligor by reason of any matter or other thing whatsoever...." It is clear from this language that Kilbane was not released by the settlement agreement between the Bank and Mrs. Burke.

■ In the alternative, Kilbane contends that Mrs. Burke's settlement with the Bank could have been for a personal debt that she incurred, and for which neither Mr. Burke nor Kilbane, as Mr. Burke's guarantor, was liable. Kilbane then goes on to argue that the Burkes' entire indebtedness to the Bank under the demand notes may have been released by the check from the Greason estate. Kilbane bases this argument upon the handwritten notation "Balance of loan due," on the corner of the check.

Three facts in the chain of events following the Bank's receipt of the Greason check preclude us from accepting this argument. First, in January, 1981, over two years after Mrs. Burke drew the $50,000 check against the Greason estate, the Bank obtained a judgment against Mr. Burke in the sum of $307,638.83, in New York state court. Clearly, the Bank would have had no reason to bring this action—and would never have obtained its judgment—if Mr. Burke had no longer been indebted to the Bank. Second, later that same year, Mr. Burke listed the Bank as an unsecured judgment creditor on his schedule in bankruptcy. Thus, as of 1981, it was obvious to all the parties concerned that the Greason payment had not terminated Mr. Burke's indebtedness. Finally, three years after the Greason check was drawn, the Bank brought a civil action against Mrs. Burke and, in settlement, Mrs. Burke paid the

---

3. Kilbane also contends that summary judgment should not have been granted because the language of the guaranty is ambiguous. We find this argument untenable. Kilbane's guaranty expressly covers "any and all indebtedness" of Mr. Burke "whether existing now or hereafter incurred." There is no ambiguity to this language.

Bank $55,000.[4] It defies all logic to suggest that the Bank would have brought this action, or that Mrs. Burke would have agreed to settle it, if either party believed the Burkes' entire indebtedness had been extinguished in 1978. Thus, we conclude that there is no merit to Kilbane's alternative argument that the check drawn on the Greason estate may have released the Burkes of their obligation to the Bank.

Accordingly, upon viewing the evidence in the light most favorable to Kilbane, we conclude that the district judge did not err in granting the Bank's motion for summary judgment.

### III.

■ Kilbane also contends that the district court abused its discretion in denying his request for additional discovery concerning the Greason check and the settlement between Mrs. Burke and the Bank. We disagree.

The district judge found that "[t]here is absolutely no indication that the [Greason] check is relevant to the instant suit." We agree with this statement for the reasons we have already expressed. The district court also noted that obtaining the file for the Florida case would have been pointless "[b]ecause the quoted language [in the settlement agreement] makes clear that Kilbane was not released," and that to permit further discovery would needlessly delay the resolution of the case. We agree.[5]

We, therefore, conclude that the district judge did not abuse his discretion in denying further discovery.

### IV.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

I am of opinion the case should be remanded for further proceedings.

I think the district court abused its discretion when it did not require the complete disclosure of the details concerning the settlement between Mrs. Burke and the bank as well as the complete details concerning the check.

While it may be true, for the reasons expressed by the majority, that on the facts as disclosed by the record as now made up, summary judgment was appropriate, what the record would disclose if the complete details surrounding the check and the settlement ˙between Mrs. Greason and the bank were disclosed may well be an entirely different matter. Accordingly, I also am of opinion the district court erred in granting summary judgment.

FRCP 26(b)(1) provides that discovery may be had regarding any matter which is "relevant to the subject matter" or "relating to the existence . . . of . . . things and . . . persons having knowledge of any discoverable matter." Questions concerning the check and the settlement with the bank I think qualify for discovery under either requirement of the Rule. Thus, by denying discovery, the district· court decided the case on a necessarily incomplete record.

---

4. Although Kilbane bases his argument upon the premise that Mrs. Burke's settlement agreement with the Bank was for a debt incurred solely by Mrs. Burke, we find that this premise lacks a factual basis. At oral argument, counsel for the Bank expressly assured this Court that the settlement agreement was in respect to "the $250,000 indebtedness of Robert Burke and Doris Burke."

5. Although Kilbane treats Mrs. Burke's settlement as a "new issue," the record establishes that by February 9, 1983, at the latest, he was aware of the Florida litigation and the fact that it had been settled. This was almost five months before he requested time to permit discovery on the matter. Thus, he has only himself to blame for failing to go forward in a timely manner upon this point.