**UNITED STATES of America,**
**Appellant,**

v.

**Stephen D. VARDELL, Appellee.**

**No. 84–1777.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1985.

Decided April 15, 1985.

Rehearing and Rehearing En Banc
Denied May 23, 1985.

John Welch, Poplar Bluff, Mo., for appellant.

Timothy J. Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Following a jury trial, Stephen Vardell was convicted of four counts of mail fraud under 18 U.S.C. § 1341. We have carefully examined each of the issues raised by Vardell. Finding them to be without merit, we affirm.

In 1982, Vardell entered into a contract with the United States Department of Agriculture (USDA). Under this contract, Vardell agreed to convert surplus USDA corn into alcohol and to transmit all proceeds from the sale of this alcohol to the USDA. In return, Vardell was to receive approximately sixty-nine cents for each gallon of alcohol produced.

After this contract was entered into, the USDA shipped 135,000 bushels of corn to Vardell. Rather than process all of the 135,000 bushels of corn received, Vardell processed only a portion of the corn while systematically selling the rest. In addition, although actually producing only 60,000 gallons of alcohol, which would have entitled Vardell to approximately $41,000, Vardell, through the mail, sent a series of 16 invoices to the USDA which indicated that 94,000 gallons of alcohol had been produced. On the basis of these invoices, Vardell was paid over $64,000 by the USDA.

During this same period, Vardell, in telephone conversations, repeatedly stated that while some alcohol had been produced, no alcohol had yet been sold. Despite these statements, it appears that a significant amount of alcohol was in fact sold by Vardell. It also appears that the proceeds from the sale of this alcohol were not turned over to the USDA by Vardell.

The USDA eventually became suspicious of Vardell's activities and instituted an investigation that led to his indictment for mail fraud. This indictment relied specifically on only five of the 16 invoices mailed by Vardell to the USDA. As indicated, Vardell was convicted of four counts of mail fraud and he now appeals.

Initially, Vardell argues that his conviction must be overturned because the government failed to present any evidence demonstrating that the five invoices relied upon by the government were in fact false. This argument is without merit. To establish the offense of mail fraud, the government was required to establish only (1) that Vardell was involved in a scheme to defraud, and (2) that Vardell's mailing of the

invoices was done for the purpose of executing this scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). Further, Vardell's mailing of the invoices need not have been essential to the accomplishment of the scheme but rather need only to have been incidental to some essential part of the scheme. *United States v. Flemino*, 691 F.2d 1263, 1265 (8th Cir.1982). As long as the evidence is sufficient to allow the jury to conclude that Vardell's use of the mail system was incidental to some essential part of a scheme to defraud the government, the actual truth or falsity of the invoices themselves is legally immaterial. *See United States v. Reid*, 533 F.2d 1255, 1264–65 (D.C.Cir.1976).

 Here, independent of the individual invoices, there is abundant evidence that Vardell was involved in a scheme to defraud the government. This evidence includes the systematic sale of USDA corn by Vardell, the failure by Vardell to turn over proceeds of alcohol that had been produced and sold by him, and numerous false telephone reports made by Vardell from the inception of the contract concerning the processing and sale of alcohol. Thus, the government had no obligation or need to rely on or establish the fraudulent nature of any one of the individual invoices in order to demonstrate the existence of a fraudulent scheme. Rather, the government was only required to demonstrate that the mailing of these invoices was used to advance Vardell's fraudulent scheme. In this case, it is clear both that an essential part of Vardell's scheme was to report falsely the amount of alcohol produced and that this part of the scheme was accomplished by sending invoices, which in their entirety were in fact false, to the USDA through the mail. Vardell's use of the mail was, in effect, "a link in the chain by which the scheme was to be accomplished." *United States v. Brown*, 540 F.2d 364, 376 (8th Cir.1976).

 Vardell also contends that certain incriminating statements made by him during a pre-indictment interview should have been suppressed since the government investigators conducting the interview failed to notify him of his *Miranda* rights until six minutes after the interview began. We find Vardell's argument unpersuasive. The record clearly indicates that at the time these statements were made by Vardell no indictment had been handed down and he had not been arrested or in any way detained. Rather, the interview was conducted during the preliminary stages of the government's investigation and was noncustodial in nature. Because of the noncustodial nature of the interview, the government investigators were under no obligation to give Vardell any *Miranda* warning, *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. Grady*, 665 F.2d 831, 833–34 (8th Cir.1981), and thus their failure to do so for the first six minutes of the interview has no effect on the admissibility of the incriminating statements made by Vardell.

Vardell raises a number of other issues challenging among other things the contents of the indictment, the overall sufficiency of the government's evidence, and the district court's decision to give certain instructions submitted by the government while at the same time refusing to give certain instructions requested by Vardell. We have carefully examined each of these contentions and find them to be without merit. Because no reversible error has been committed, we affirm Vardell's conviction.