**TEMPORARIES, INC.**

v.

**MARYLAND NATIONAL BANK.**

Civ. No. Y–84–4519.

United States District Court, D. Maryland.

Jan. 16, 1986.

Frederick C. Williams, Washington, D.C., for plaintiff.

Virginia W. Barnhart, K. Donald Proctor, Towson, Md., and Duncan W. Keir, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Several motions for summary judgment are pending in this action for fraudulent misrepresentation, a dispute resulting from a series of negotiations between Temporaries, Inc. ("TI"), Maryland National Bank ("MNB"), and a corporation which has since declared bankruptcy—Business Furniture Interiors, Inc. ("BFI").

FACTS

Maryland National Bank extended a line of credit to BFI in August, 1983. In December, 1983, it was apparent that BFI was having financial difficulties and could not reduce the percentage of its borrowings to meet the bank's requirements. At that point, MNB instructed BFI to refinance its loans by February 15, 1984, or be liquidated. In an effort to resolve its difficulties, BFI sought financing from TI, which was in the business of providing temporary employment services to the general business community, and which began considering the possibility of acquiring BFI as a way of expanding into the office furniture business. Temporaries also had a banking relationship with MNB, and the two conferred during the first several months of 1984, with BFI's permission, about Temporaries' contemplated acquisition of BFI. It is the content of those conversations which are the essence of the fraud claim. Plaintiff charges that the bank undertook to speak about BFI but in doing so, withheld information about the bank's inability to evaluate BFI's financial status due to the severe unreliability of BFI's bookkeeping, and furthermore the bank made representations that BFI had sufficient collateral and that it had the potential to be profitable when there was no basis for such representations, and, in fact, they were untrue. Temporaries argues that it interpreted these comments as a confirmation of BFI's representations and, in reliance on these representations and because of a time pressure imposed by the bank, TI advanced money to BFI in February, 1984, prior to a thorough accounting of BFI's financial status. Maryland National Bank denies that any representations were made. In March, a formal accounting of BFI revealed that the company had material operating losses and a negative net worth. Upon receiving this information, Temporaries rescinded its

conditional merger agreement. Shortly thereafter, the bank called BFI's notes and BFI went into Chapter 11 proceedings. Temporaries now seeks to recover the advances, totaling $233,000, which it made to BFI and from which it claims the bank benefitted.

CHOICE OF LAW

■ The parties' interaction occurred across two jurisdictions—Maryland and the District of Columbia—thus raising a choice of law question and a preliminary question of which choice of law rule to apply. This case was originally brought in the District of Columbia, and later transferred to Maryland under 28 U.S.C. § 1404. Normally the choice of law rule of the forum state applies to determine which state's substantive rules of decision apply, *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), but where there is a change of venue the guideline is different. In those cases, the choice of law doctrine of the original forum should apply, in an effort to maintain a consistent substantive law despite the transfer of venue. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023 (4th Cir. 1983). Thus, the District of Columbia's choice of law rules should apply.

■ The District of Columbia applies the law of the state with the most significant relationship to the matters at issue. *Felch v. Air Florida, Inc.*, 562 F.Supp. 383, 385 (D.D.C.1983). *Accord Hitchcock v. United States*, 665 F.2d 354, 360–61 (D.C.Cir.1981). Both Maryland and the District of Columbia have significant relationships with the matters in this case. Maryland's interest is primarily tied to regulating the defendant—a national bank based in Maryland and maintaining its principal operations in Baltimore City. In this particular case, the technical handling of plaintiff's account was completed in Maryland, some of the communications originated in Maryland, and the personnel who examined BFI's accounts were located in Maryland. Surely, Maryland has an interest in regulating and applying its laws to a bank with such substantial operations within the state.

■ The contacts with the District of Columbia in this case, however, are greater than the contacts with Maryland. Temporaries is a District of Columbia corporation which created a relationship with MNB as a national bank that has branch offices within the District, and the center of this relationship remained there. While some of the representations and paperwork originated in Maryland, communications were intentionally directed to a District of Columbia customer, which would rely upon the information in its own District of Columbia office. By undertaking to have substantial operations in other jurisdictions—even though it may be a small percentage of the corporation's cumulative business—MNB should be subject to the policies and governmental interests of these jurisdictions for activity undertaken within them. Therefore, the District of Columbia courts would most certainly apply their own substantive law to this case.

COUNTS I AND II

■ Defendant moved for summary judgment on Counts I and II which allege misrepresentation and fraudulent inducement, and plaintiff in response also moved for summary judgment. Both motions must be denied because there are several controverted material facts which should be presented to the jury. The parties agree that the elements of fraud are:

1) a false representation

2) in reference to a material fact

3) made with knowledge of its falsity

4) and with the intent to deceive

5) with action taken with reliance on the representation.

*Blake Construction Co. v. C.J. Coakley Co.*, 431 A.2d 569, 577 (D.C.App.1981); *Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527, 541 n. 32 (D.C.Cir.1975), *rev'd on other grounds*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). *Cf. Appel v. Hupfield*, 198 Md. 374, 378, 84 A.2d 94 (1951).

The facts in support of almost all of these elements are·disputed in this case.

## COUNTS III AND IV

### A. *Validity of the Purchase Money Security Interest*

Plaintiff moved for summary judgment as to Counts III and IV, which charges that Temporaries had a purchase money security interest in certain inventory collateral which secured a $75,568.09 loan to BFI, yet MNB received the proceeds from sale of the collateral. The security interest was originally created and perfected in Virginia, which requires that the financing statement be filed both locally, in the Office of the Clerk of the Circuit Court for Fairfax County, Virginia, and centrally, and in the Office of the Virginia State Corporation Commission. Upon completion of these two filings, the purchase money security interest is perfected and has priority over a conflicting security interest.

Defendant argues that Temporaries' security interest was not perfected upon receipt of the inventory as required ·by Section 8.9–312(3) of the Virginia Code,* and thus the security interest is invalid. Furthermore, MNB contends that Temporaries inadequately described its collateral, which defeats the purchase money security interest claim.

 Although plaintiff completed the local filing of the financing statement in Fairfax County on February 14, 1984, the central filing in the Office of the Virginia State Corporation Commission was not completed until April 20, 1984—well after the receipt of the collateral. Thus, Temporaries did not properly perfect the security interest under the formal requisites of the Code. There is a good faith exception for improper filings, however, which is applicable in this case. Under Section 8.9–401(2) of the Virginia Code:

> A filing which is made in good faith in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this title and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

It is clear from the evidence that Temporaries did notify MNB of the contents of the financing statement and that its failure to properly file was careless rather than an attempt to withhold notice. In light of MNB's actual knowledge the security interest should be viewed as perfected. *See American Employers Insurance Co. v. American Security Bank*, 747 F.2d 1493, 1498 (D.C.Cir.1984); *In re Mistura, Inc.*, 705 F.2d 1496, 1498–1499 (9th Cir.1983).

 Defendant's second contention is also insufficient to invalidate Temporaries' security interest. In its letter to MNB, Temporaries described the collateral as "approximately 150 pieces of office furnishings comprised of all metal desks, file cabinets and desk chairs." The same number was included in the financing statement, but the supplier actually provided 290 pieces of inventory to which Temporaries claims an interest. In the context of the events surrounding the purchase money security interest, this error was insignificant and should not invalidate Temporaries' priority for the reasons which follow.

According to the defendant's portrayal of the facts, at the time of the $75,568.09 loan BFI had fully extended its credit with several suppliers and was required to deal on cash only terms. It was also clear that the bank would not make any additional loans to allow BFI to make new purchases. Thus, when Temporaries issued its check it was to cover the entire shipment of inventory ordered by two companies known as CIT and GTE. According to the deposition of a bank officer, Michael Williams, the purpose and the scope of the security interest was known to the bank through written

---

* Because Virginia law governed the original filing of the purchase money security interest, the same law must be applied in determining whether that interest was perfected.

notice and telephone conversations. It is undisputed that plaintiff's loan facilitated the purchase of the 290 (rather than 150) pieces of furniture, and not realistically disputed that the bank knew of the scope of the lien.

■ Financing statements are not normally required to contain precise quantity descriptions. Instead, the financing statement must be sufficiently descriptive so as reasonably to generate further inquiry about the nature and the scope of the collateral. *In re Varney Wood Products, Inc.*, 458 F.2d 435 (4th Cir.1972). A financing statement is sufficient if it contains a statement indicating the type, or describing the items of collateral. Va.Code § 8.9–402(1). Here, Temporaries' description defines the type of collateral and additionally indicates a large number of items where no quantity description was required. This description is sufficient under the policies of Article 9 of the Uniform Commercial Code: to protect the interests of third party secured creditors, such as defendant, by providing notice of intervening interests in collateral. The fact that upon receipt of this information the bank did make further inquiries and learned more precisely of the scope of the encumbrance only lends further equitable support for the conclusion that the notice was adequate.

**B.** *Amount of the Security Interest*

■ Defendant seeks to reduce the amount of Temporaries' security interest claim by arguing that Temporaries is not entitled to the portions of cash deposits of GTE and CIT made in payment for the collateral which were credited against BFI's outstanding loans in December, 1983. This issue boils down to the question of who legitimately had an interest in these December, 1983 cash deposits. From the facts as described by the parties, it is clear that the deposits were advance payments for future shipments of goods, rather than payments for goods already received in which the bank would have had an interest and a right of set-off against the indebtedness. *See* 6 Michie, Banks & Banking § 52

at 127 n. 64 (1975). Business Furniture Interiors had rights in the collateral and could assign them to Temporaries. Va. Code 8.9–203.

■ Defendant's final argument—that the security interest should be reduced by the amount of sales tax must also fail. On the face of the Virginia Code, Section 8.9–306(1), "proceeds" is defined as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds." Short of a demonstration that there is some existing, overriding lien on the taxes, they are considered part of the proceeds and should not be subtracted.

In conclusion, Temporaries had a perfected purchase money security interest in the described collateral and MNB is liable to plaintiff for the proceeds of such collateral plus interest accumulated from the date of the sale of the collateral.

## ORDER

In accordance with the statements in the attached Memorandum, it is this 16th day of January, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's and plaintiff's motions for summary judgment on Count I and II BE, and the same IS, hereby DENIED;

2. That plaintiff's motion for summary judgment on Counts III and IV BE, and the same IS, hereby GRANTED; and

3. That a copy of this Memorandum and Order be mailed to the parties.