IT IS FURTHER ORDERED that plaintiff's motion for sanctions be and is granted.

IT IS FURTHER ORDERED that defendants shall pay plaintiff's expenses and attorney's fees incurred as a result of the filing of the notice of removal.[2] Plaintiff is directed to file, within ten (10) days of the date of this order, a petition of its expenses and attorney's fees. Defendants shall be granted five (5) days from the date of plaintiff's compliance to file a memorandum in opposition to plaintiff's petition. Thereafter, the Court will take the matter under submission for action as it deems proper.

On account of the Court's decision to remand, it expresses no opinion on defendants' motion for joinder and motion to quash the temporary restraining order.

TEMPORARIES, INC.

v.

MARYLAND NATIONAL BANK.

Civ. No. Y–84–4519.

United States District Court,
D. Maryland.

June 6, 1986.

---

2. Costs are, of course, recoverable at the discretion of the district court if "it appears that the case was removed improvidently". 28 U.S.C. § 1447(c).

Frederick C. Williams, Washington, D.C., for plaintiff.

Virginia W. Barnhart, K. Donald Proctor, Towson, Md., and Duncan W. Keir, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Following this Court's Order of January 16, 1986, granting in part and denying in part plaintiff's motion for summary judgment and denying defendant's motion for summary judgment, 626 F.Supp. 1025, defendant filed additional motions that are now ripe for resolution. Defendant moves to dismiss from the amended complaint Count VI claiming punitive relief, Count VIII claiming recovery under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and the claims for attorney's fees under Counts I, II, III, IV, and VII. Also, defendant requests reconsideration of this Court's decision to grant plaintiff's motion for summary judgment on Counts III and IV of the original complaint and moves for an altered judgment on those counts.

## FACTS

This case arises out of plaintiff's loss of $233,000 which it advanced to a corporation which has since declared bankruptcy— Business Furniture Interiors, Inc. ("BFI"). Plaintiff, Temporaries, Inc. ("TI"), is in the business of providing temporary employment services to the general business community, and it contemplated acquiring BFI as a way of expanding into the office furniture business. TI knew that BFI was in need of financing but contends that it was unaware of the severity of BFI's financial condition. In the process of acquiring BFI, TI extended the advances to BFI which are at the base of this claim.

TI charges that defendant, Maryland National Bank ("MNB"), is responsible for the repayment of those advances because it induced TI to extend the financing. TI explains that it was in the Bank's interest to find alternative financing for the failing BFI, which owed money to the bank. In December, 1983, MNB instructed BFI to refinance its loans before February 15, 1984, or be liquidated. TI charges that during the first several months of 1984, MNB made negligent and fraudulent representations about the sufficiency of BFI's collateral and its potential to be a profitable operation, and that MNB also withheld information about the unreliability of BFI's bookkeeping. Through these communications, MNB allegedly was trying to induce TI to invest in or merge with BFI, so the bank could avoid losses.

In March, 1984, TI's formal accounting of BFI revealed that BFI had material operating losses and a negative net worth. Upon receiving this information, TI rescinded a conditional merger agreement that it had entered into with BFI, and that action triggered calling in BFI's notes by the Bank and eventual declaration of bankruptcy by BFI. TI now seeks to recover the advances, totaling $233,000, which it made to BFI and from which it claims the Bank benefitted, and TI also seeks treble damages under RICO, attorney's fees and punitive damages.

## MOTION TO DISMISS

Defendant moves to dismiss Counts VI and VIII of plaintiff's amended complaint and further moves to dismiss plaintiff's claims for attorney's fees set forth in Counts I, II, III, V, and VII of the amended complaint. Count VI states a claim for punitive damages based on negligent misrepresentation and plaintiff concedes that the claim is subsumed under other counts and that it may be dismissed. Therefore,

Count VI will be dismissed without discussion. The remaining claims merit discussion.

COUNT VIII—RICO

Defendant attacks plaintiff's RICO claim from a number of angles, drawing on the vigorous legal debate about the intended breadth of RICO. The requirements for a valid RICO claim are clearly defined by the statute, which creates a private cause of action and provides for the recovery of treble damages for "any person injured in ... business or property by reason of a violation of § 1962." 18 U.S.C. § 1964(c).

Plaintiff has plead violations of all four parts of § 1962, which in relevant part provides:

> (a) It shall be unlawful for any person who has received any income, derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce ...;
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce;
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...;
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this section.

■ As one requirement for recovery under any of these subsections, plaintiff must establish that its injury arose from a "pattern of racketeering activity." "Rack-eteering activity" is defined under § 1961(1)(B) as including mail fraud and wire fraud as indictable under Title 18, and including fraud in the sale of securities under Title 11, United States Code. To establish a "pattern" of such racketeering activity, plaintiff must allege "at least two acts of racketeering activity." 18 U.S.C. § 1961(5).

Plaintiffs allege, in their amended complaint (¶ 91) that on numerous occasions the Bank made use of the mail and telephone communication in interstate commerce in furtherance of its scheme. In paragraphs 27 through 43 of the amended complaint, there are precise allegations of approximately five phone calls, and indications that there were probably several more. The communications seem to have commenced around the beginning of February, 1984, continuing through mid-March, 1984.

Defendant contends that TI's allegations fail to establish the pattern of racketeering activity necessary to satisfy the requisities of RICO. MNB argues that there were only a few communications utilizing the mails or the telephones, and that it is not clear that those communications were interstate or were the communications in which the allegedly fraudulent statements were made. Defendant insists the alleged acts cannot constitute a "pattern" because they were actions taken in furtherance of only one scheme or transaction, and that more than one scheme is required under RICO.

■ For the purpose of evaluating the presence of a pattern, this Court will interpret the allegations favorably to plaintiff and assume that there were approximately ten to fifteen communications over the course of a nearly two months. However, even giving the plaintiff the benefit of the doubt, this Court finds that the scheme alleged does not fall within the intended scope of the extraordinary relief afforded under RICO for the reasons which follow.

Defendant's arguments arise at a time when the issues of the scope of RICO and the breadth of the concept of "pattern" are being hotly debated. The Supreme Court

recently addressed the issue of the scope of RICO, and restated the generally accepted view that RICO is to be "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Company, Inc.,* — U.S. —, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985) (citing Pub.L. 91–452, § 904(a), 84 Stat. 947). In *Sedima,* the Court refused to allow restrictions on the breadth of RICO which ran contrary to congressional intent and the statutory language. Yet the Court did concede that RICO is being applied too expansively, and that "in its private civil version, RICO is evolving into something quite different from the original conception of its enactors." *Sedima,* 105 S.Ct. at 3287. The undue breadth is to be attributed only partially to the sweeping statutory language, according to the Court. The rest of the responsibility rested with Congress and the courts, which have failed to "develop a meaningful concept of 'pattern.'" *Id.* Thus, the Court suggested that some refinements—and perhaps limitations—of the meaning of pattern are due.

Although the question of what constitutes a pattern was not before the *Sedima* Court, it did comment that:

> while two acts are necessary (to create a pattern), they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that

"(t)he term 'pattern' itself requires the showing of a relationship ... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern ..."

*Sedima,* 105 S.Ct. at 3285 n. 14 (citations omitted). Thus, the Court indicated that RICO can be interpreted less expansively yet fulfill its remedial function if the courts focus on developing a more specific definition of "pattern."

Prior to *Sedima,* some courts were willing to find the requisite pattern of racketeering activity in any case in which there were two predicate acts. *See, e.g., United States v. Parness,* 503 F.2d 430, 438 (2d Cir.1974) (convictions on any two counts charging interstate transportation of stolen goods established RICO pattern), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 774, 42 L.Ed.2d 801; *United States v. Aleman,* 609 F.2d 298, 304 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). However, in view of the *Sedima* dicta, it is clear that showings of "continuity" and "relationship" may be required in addition to the presence of two predicate acts. Two actions are merely a minimal requirement which standing alone may be insufficient to constitute a pattern under RICO.

TI's pleadings satisfactorily establish a "relationship" between the various allegedly fraudulent communications, as well as a relationship between the communications and the affairs of the enterprise.[1] The pleadings also demonstrate that there may have been more than one predicate act, in the nature of mail or wire fraud and securities fraud. However, it is unclear whether the several communications alleged in this case do constitute a "pattern" or demonstrate "continuity" as required under RICO.

Several courts have re-examined the meaning of "pattern" in light of *Sedima*

---

1. Courts have differed in their interpretations of the meaning of "relationship." Some hold that there must be a relationship between the predicate offenses and the affairs of the enterprise, while others require a relationship between the various predicate offenses. *See Professional Assets Management, Inc. v. Penn Square Bank, N.A.,* 616 F.Supp. 1418, 1422 n. 2 (W.D.Okl. 1985).

and decided that where there is only one scheme, there is no pattern of racketeering activity. For example, the Eighth Circuit recently decided that a scheme to convert liquid petroleum gas from a pipeline was a single activity rather than a pattern, and was insufficient under RICO. *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir. 1986). *See also Fleet Management Systems v. Archer-Daniels-Midland Co.*, 627 F.Supp. 550 (D.C.Ill.1986) (in order to have continuity, "pattern" requires at least two criminal episodes or schemes); *Soper v. Simmons International, Ltd.*, 632 F.Supp. 244 (S.D.N.Y.1986) (predicate acts alleged merely were ministerial acts performed in the execution of a single fraudulent scheme); *Allington v. Carpenter*, 619 F.Supp. 474 (C.D.Cal.1985) (three acts of wire fraud comprised a single criminal episode, not a pattern under RICO; suggesting that more than one scheme is always necessary); *Medallion TV Enterprises, Inc. v. SelecTV of California*, 627 F.Supp. 1290 (C.D.Cal.1986). The *Fulmer* court reasoned that although the one scheme was a continuing one, there was no proof that the enterprise had engaged in racketeering activities in the past or were currently engaged in racketeering activities elsewhere. More than one scheme was required. This seems to be an unnecessarily restrictive approach because there may have been an alternative indicia of continuity; it seems premature to terminate the analysis after simply counting the number of "schemes."

A more flexible and accurate approach to identifying patterns may be to require either 1) more than one scheme or 2) an open-ended continuous scheme which contains a multiplicity of predicate acts. The latter category can be further defined on a case by case basis, just as the definition of "scheme" will certainly require further development.[1A] This approach is most compatible with Congressional intent, and reconciles several other recent decisions defining the scope of pattern which are con-trary to the "two scheme" requirement. *See Bank of America National Trust & Savings Association v. Touche Ross & Co.*, 782 F.2d 966, 971 (11th Cir.1986) (nine separate acts of wire and mail fraud over a period of three years satisfies pattern requirement although one scheme existed); *Alexander Grant and Co. v. Tiffany Industries, Inc.*, 770 F.2d 717, 718 n. 1 (8th Cir.1985) (thirty acts of mail and wire fraud satisfied "continuity plus relationship" requirement); *Trak Microcomputer Corp. v. Wearne Brothers*, 628 F.Supp. 1089 (N.D. Ill.1985) (although only one scheme, allegations of numerous continuous acts constituted a pattern).

A flexible approach similar to the one this Court is applying was adopted in *Graham v. Slaughter*, 624 F.Supp. 222 (N.D. Ill.1985), which held that in some cases one open-ended scheme may include a sufficient number of independent criminal episodes to satisfy the "continuity" factor of *Sedima*. It found that a two-year practice of embezzling funds from a company through otherwise separate transactions constituted a "pattern" under RICO. However, to find the requisite continuity in a single scheme, the court was careful to require a series of separate transactions or "criminal episodes" which comprised the scheme, demonstrating that the activity was not sporadic or isolated. *Graham*, 624 F.Supp. at 224–225. In doing so, the *Graham* court agreed with the result in an earlier decision within its district holding that two mailings were insufficient to establish a pattern of racketeering activity, when made in connection with a single phony contract in one kickback scheme. *See Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985).

Thus, an inquiry into the existence of a pattern must look beyond the mere counting of predicate acts and evaluate whether there is more than one scheme. If there is only one scheme, then the scope of the scheme itself can be scrutinized for factors

---

**1A.** Courts may consider a variety of factors which are indicative of continuity, such as the length of the scheme, the number of predicate acts and the number of victims of such acts, and the likelihood that the scheme would continue indefinitely.

indicating continuity. *Cf. Torwest DBC, Inc. v. Dick,* 628 F.Supp. 163 (D.Colo.1986) (number of predicate acts is irrelevant; the question is the nature of the conduct under all of the circumstances); *Allright Missouri, Inc. v. Billeter,* 631 F.Supp. 1328 (E.D. Mo.1986). Without an open-ended series of activities which comprise a continuing scheme, more than one scheme should be required to establish a "pattern" of racketeering activity. This is less a technical or legal definition of the term "pattern" than an attempt to use the word in its common sense, lay usage—carrying its usual connotations.[2] Such an interpretation would prevent the propelling of isolated schemes of garden variety fraud into the domain of RICO simply because several interstate phone calls were conducted. But it will leave intact the broad remedial purposes of RICO in cases in which Congress intended to provide an extraordinary remedy—those which evidence a true pattern of racketeering activity.

Interpreting "pattern" as implying more than simply two predicate acts run contrary to the approach adopted in several cases within this judicial district. *See Morley v. Cohen,* 610 F.Supp. 798 (D.Md.1985); *Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 609 F.Supp. 1055 (D.Md.1985). Those courts required only that the plaintiffs allege two predicate acts and did not delve into the definition of "pattern." An earlier decision of this circuit did touch on the issue of the sufficiency of a pattern when it viewed "a set of closely related wire fraud and mail fraud claims (as) essentially representing subdivisions of a single on-going illegal act." Thus, it required the linking of an additional predicate act before finding a pattern. *United States v. Computer Sciences Corp.,* 689 F.2d 1181 (4th Cir.1983), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). But the *Computer Sciences* court tended toward a "two scheme" requirement. These cases all are valid precedent, yet predated the *Sedima* dicta which indicates that further development of the concept of "pattern" is overdue. Thus, this Court departs from the earlier approach of this district.

Applying this view of a "pattern of racketeering activity" to the facts of this case, it is clear that the allegations are insufficient. There is only one scheme to defraud alleged. This is the scheme to induce TI to finance one of the bank's financially failing debtors. Thus, the question is whether this one scheme was sufficiently continuous—by containing a multiplicity of predicate acts and being open-ended—to satisfy RICO.

TI argues that its allegations state sufficient continuity to establish a pattern under RICO, because there were numerous predicate acts and because the scheme threatened to continue indefinitely. This Court disagrees, assuming that the communications commenced around the beginning of February, 1984, and continued while TI transferred $125,000, and $108,000 to BFI, and entered into a conditional stock transfer agreement with BFI in preparation for TI's purchase of BFI. By March 20, 1984, the entire deal came to a halt because TI had concluded its independent auditing of BFI and learned that BFI was insolvent. The entire situation lasted at most two months, and under no circumstances would have continued much longer. It was clear that TI was going to conduct a formal accounting of BFI and either complete the purchase or terminate the negotiations. In either case, TI soon would have more information about TI than the Bank could possibly have. TI would no longer be in a position of potential reliance. There was a specific goal which would mark the end of the finite and limited scheme. Thus, the scheme itself was isolated and was not of a continuing nature. *Cf. Bank of America*

---

**2.** The *Inryco* court also attempted to withdraw from a technical view of pattern, urging a common sense approach. "Surely the continuity inherent in the term (pattern) presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'" *Northern Trust Bank/O'Hare, N.A. Inryco,* 615 F.Supp. 828 at 831 (D.C.Ill. 1985).

*v. Touche Ross,* 782 F.2d 966 at 971 (11th Cir.1986) (RICO scheme to induce extension of credit continued over three years). Furthermore, the phone calls and mailings made in furtherance of the scheme were essentially one set of negotiations and fail to add a continuous character to the scheme. Finally, although there were a number of allegedly fraudulent communications, there was only one recipient of those communications. Thus, it is unnecessary to await further details to determine whether "numerous" phone calls were in actuality five or twenty completed communications. This case lacks the continuity required of a valid RICO claim.

In concluding that the RICO claim is inappropriate in this case, there is no need to reach the question of whether or not the "enterprise" requirement is satisfied by the pleadings. 18 U.S.C. §§ 1961(4), 1962.

ATTORNEY'S FEES

Defendant also argues that the request for attorneys fees is improper under Counts I, II, III, V and VII. Plaintiffs have divided their requests for attorney's fees into two categories: 1) those connected solely with the prosecution of this action, and 2) those which are not connected to the litigation but rather relate to the underlying acquisition, contract and rescindment, of BFI and subsequent bankruptcy case.

As to the first category, attorney's fees for the prosecution of the instant litigation would not be recoverable absent a statutory or contractual basis, or other applicable exception such as bad faith. *See Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Biddle v. Chatel,* 421 A.2d 3, 7 (D.C.App.1980). Although RICO provides a statutory basis for the recovery of attorney's fees, 18 U.S.C. § 1964, the RICO claim is no longer a part of this case. Thus, there is no basis for the recovery of the costs of this litigation under the American Rule, which requires that normally each party pays its own litigation expenses. This rule has no bearing on attorney's fees which are separate from the litigation and thus the second category of expenses are more accurately viewed as out of pocket expenses includable in a claim for damages. Legal expenses for arranging the conditional purchase of BFI may be included as pecuniary damages to the extent that they are reasonable and were proximately caused by the alleged misrepresentations. Similarly, the attorney's fees arising out of a prior bankruptcy proceeding are from collateral litigation for which expenses are recoverable. These expenses must be the natural and proximate consequences of the injury complained of, must have been incurred necessarily and in good faith, and the amount must be reasonable. *Fowler v. Benton,* 245 Md. 540, 226 A.2d 556 (1967), *cert. denied,* 389 U.S. 851, 88 S.Ct. 42, 19 L.Ed.2d 119. *See also Answering Service, Inc. v. Egan,* 728 F.2d 1500 (D.C.Cir.1984); *Ranger Construction Co. v. Prince William County School Board,* 605 F.2d 1298 (4th Cir.1979).

PLAINTIFF'S MOTION TO ALTER JUDGMENT

On January 16, 1986, this Court issued a Memorandum and Order which granted plaintiff's motion for summary judgment on Counts III and IV of the original complaint (Counts IX and X of the amended complaint). In pertinent part, that decision held that TI's purchase money security interest of $75,568.09 in certain BFI inventory is valid in full. In reaching that conclusion, this Court held that an advance payment on the inventory is part of the proceeds in which TI has an interest, regardless of the fact that BFI deposited the advance in its account at MNB before TI's security interest was created. Defendant now re-asserts its claim for the advance payment, arguing that BFI had already relinquished its rights in the advance by the time TI's security interest was created. Defendant states that it does not wish to belabor the issue, and neither does the Court. Therefore, it is necessary to elaborate upon the prior decision very briefly.

This Court affirms the concept that a security interest cannot be created

unless the debtor has rights in the collateral which can be assigned. *Matter of Emergency Beacon Corp.*, 665 F.2d 36, 40 (2d Cir.1981); *Northwestern Bank v. First Virginia Bank of Damascus*, 585 F.Supp. 425, 428 (W.D.Va.1984). Yet the Bank merely assumes, just because it applied BFI's deposit towards outstanding loans, that the Bank rather than BFI legitimately had rights in that deposit. This is not the case. The deposit consisted of an advance payment on new merchandise which BFI had not yet purchased. The Bank did not yet have collateral rights in that new merchandise, and by the time the merchandise was purchased TI held the secured interest in the proceeds from that merchandise. "Proceeds" may include deposit accounts and advance payments. *United States v. Mitchell*, 666 F.2d 1385, 1388–89 n. 2 (11th Cir.1982), *cert. denied*, 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (cash advance on crops constituted proceeds); *United States v. Lott*, 751 F.2d 717, 719 (4th Cir. 1985), *cert. denied*, —— U.S. ——, 105 S.Ct. 1852, 85 L.Ed.2d 150. Although from the terms of the agreement between the bank and BFI, the bank had rights in the money deposited in a "Collateral Account," such an account is never mentioned in the pleadings. The Bank has not convinced this Court that its habit of generally applying BFI's deposits against outstanding loans is determinative that BFI lost its rights to a cash advance simply by depositing it. The amount of the judgment will not be altered as to the cash advance, nor as to the sales tax for the reasons stated in the January 16, 1986 Memorandum.

Finally, MNB contests plaintiff's calculation of approximately $13,000 as pre-judgment interest. This issue was not addressed in the prior motions and corresponding memorandum of this Court. Because damages are considered to be a substantive matter, the law of the District of Columbia will be applied to this issue.[3] *Marine Midland Bank v. Kilbane*, 573 F.Supp. 469, 471 (D.Md.1983), *aff'd*, 739

F.2d 958 (4th Cir.1984); *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 855 (D.C.Cir.1981). The law of the District of Columbia precludes pre-judgment interest in actions based on tort, such as this action. Therefore, defendants are correct in their assertion that plaintiff's calculations of the amount owed pursuant to their purchase money security interest should not include any pre-judgment interest.

In conclusion, defendant's motion to dismiss will be granted in regard to Count VIII (RICO), Count VI (punitive relief), and attorney's fees arising out of the instant litigation. The motion will be denied as to attorney's fees which are properly viewed as damages. Defendant's motion for altering judgment and for reconsideration will be denied on all issues except that the amount of judgment will be modified to exclude pre-judgment interest.

Court held that the District of Columbia substantive law applies.

---

3. The choice of law issue was addressed in the January 16, 1986 Memorandum, in which this