ANTON MOTORS, INC.

v.

William R. POWERS, Sr.

Civ. No. Y–85–4502.

United States District Court, D. Maryland.

Sept. 25, 1986.

Daniel J. Hurson, Rockville, Md., for plaintiff.

John M. Quinn, Rockville, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

This is an action brought by Anton Motors, Inc., ("Anton"), against its former manager, alleging that the manager falsified corporate documents, diverted funds to his own use, and appropriated auto parts which were the property of the corporation. Anton's theories for recovery include breach of fiduciary duty, deceit, conversion, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The only basis for federal jurisdiction is RICO, 18 U.S.C. § 1964. Anton is a new car dealership which sells and services automobiles. Both parties are Maryland residents.

Defendant William R. Powers, Sr., filed a motion to dismiss the complaint for lack of subject matter jurisdiction. He argues that the allegations are insufficient to state a cause of action under RICO because they fail to allege either a pattern of racketeering activity or mail fraud. Consequently, he argues that there is no federal jurisdiction. No hearing is required to resolve this motion. Local Rule 6.

## ALLEGATIONS

Anton alleges that Powers was hired in September, 1980, to manage its body shop. Running the body shop operation with complete authority, Powers' responsibilities included the handling of all books and records, hiring and firing body shop employees, and ordering parts. Sometime during the course of employment, Powers allegedly devised a scheme to defraud his employer through a variety of methods, including taking money and property and concealing these actions by falsifying documents.

The "racketeering activity" alleged is mail fraud. 18 U.S.C. § 1961(1). Anton asserts that on eight specific occasions between July 9, 1984 and October 23, 1984, Powers caused the mailing of checks from various insurance companies in furtherance of the scheme to defraud. It also alleges that Powers caused numerous additional mailings in furtherance of the scheme but no other specifics are provided. Powers was fired in January, 1985.

## RICO

Plaintiff alleges a violation of RICO, 18 U.S.C. § 1962(c), which prohibits:

any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

An "enterprise" is defined under RICO as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activi-

ty," as defined by statute, includes acts of mail fraud. 18 U.S.C. § 1961(1).

The complaint alleges that Powers was an employee of a corporation, Anton, which is clearly an enterprise under RICO. As "racketeering activity," several predicate acts of mail fraud are alleged.

■ Defendant argues that mail fraud was insufficiently pled. Under 18 U.S.C. § 1341, the elements of the offense of mail fraud are: 1) the existence of a scheme to defraud; and 2) causing the mails to be used in furtherance of that scheme. *United States v. Bonnette*, 663 F.2d 495, 498 (4th Cir.1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 666; *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236. The use of the mails need not be actually intended, as long as it is reasonably foreseen, *United States v. Bonnette*, 663 F.2d at 498, and is at least incidental to an essential part of a scheme. *E.g.*, *United States v. Vardell*, 760 F.2d 189 (8th Cir.1985); *United States v. Lebovitz*, 669 F.2d 894 (3d Cir.1982), *cert. denied*, 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446; *United States v. Perkal*, 530 F.2d 604 (4th Cir.1976), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 82.

■ In the alleged scheme, the falsification of various documents—including insurance documents—was essential. Use of the mails in furtherance of the receipt of insurance checks was foreseeable and was incidental to the falsifications committed with the intent of defrauding Anton. The claims of mail fraud contain the essential elements and therefore are adequately pled.

## CONDUCT

To fall within the scope of RICO, plaintiff must demonstrate that defendant conducted or participated in the "conduct of the enterprise's affairs through a pattern" of racketeering activity. This requirement is ambiguous at best. It is unclear whether "conduct" encompasses only essential elements of the enterprise's activities or whether conduct can include even the activities most peripheral to the operation of the enterprise. In this case, the enterprise is devoted to the sale and servicing of automobiles. Throughout the period of alleged fraudulent activity, the basic conduct of the enterprise remains unchanged—it serviced automobiles, charged customers and their insurance companies for the services performed, and collected the legal debts. It appears from the pleadings that neither customer nor insurance company was defrauded, and the only illegality was that an employee of the enterprise skimmed money from the enterprise by juggling numbers and falsifying documents. The question is whether this type of activity—a single employee defrauding and stealing from his employer—is "conduct(ing) or participat(ing) ... in the conduct of (Anton's) affairs through a pattern of racketeering activity."

■ There have been few limits placed on what constitutes conduct under RICO. The Fourth Circuit attempted to limit RICO's application to conduct which benefitted or advanced the enterprise. That view was immediately modified, however, and there is no requirement that the enterprise benefit from the racketeering activity. *United States v. Webster*, 669 F.2d 185 (4th Cir.1982). *See also United States v. Barber*, 668 F.2d 778, 785 (4th Cir.1982). The enterprise may be a passive instrument of the racketeering, or even a victim of the activities. *United States v. Provenzano*, 688 F.2d 194 (3d Cir.1982), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634; *Haroco, Inc. v. American National Bank and Trust Company of Chicago*, 747 F.2d 384, 401 (7th Cir.1984) (enterprise may be victim, prize, instrument, or perpetrator), *rev'd on other grounds*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

■ The allegation in this case is that Anton was the victim and instrument of a fraud. But from the language of § 1962(c), it appears that even where the enterprise is a victim, the enterprise must also be used to perpetrate or be the vehicle

of racketeering activity on some third party. In other words, the enterprise's own affairs must present some external danger to the public interest.

This interpretation is supported by the structure of § 1962. Subsections (a) and (b) provide a claim for enterprises which are being taken over by criminal elements. They encompass the illegal acquisition of an enterprise through racketeering and the control of enterprises by persons involved in racketeering. Subsection (c) is distinguishable in that it encompasses the situation in which the enterprise itself is conducting racketeering activity.[1]

This interpretation is also in keeping with the legislative history, which indicates that civil remedies were adopted in an attempt to target broader and more menacing activities than simple employee skimming. It hoped to attack "corruption in the acquisition or operation of business" to undercut activity which was a danger to the public interest. S.Rep. No. 91–617, p. 81 (1969). The treble damages provision was intended to be "a major new tool in extirpating the baneful influence of organized crime in our economic life." 116 Cong.Rec. 25190 (1970); *Sedima S.P.R.L. v. Imrex Company, Inc.*, —— U.S. ——, 105 S.Ct. 3275, 3281, 87 L.Ed.2d 346 (1985).[2]

Recently the Supreme Court held that under RICO no special type of "racketeering injury" is required beyond those acts specifically enumerated in § 1961(1). *Sedima*, 105 S.Ct. at 3286. The Court also cautioned against reading any additional requirements into RICO beyond those explicitly set out in the statute. Among RICO's explicit requirements is "conduct,"

yet the Court never touched upon the meaning of "conduct" under RICO. *Sedima*, 105 S.Ct. at 3285. Naturally, any interpretation of "conduct" will effect the scope of activity encompassed by RICO, but no requirements are being added.

PATTERN OF RACKETEERING ACTIVITY

A further requirement under RICO is a *"pattern* of racketeering activity," which is defined by statute as "at least two acts of racketeering activity." The meaning of "pattern" is currently in flux. Some courts have been willing to find the requisite pattern in any case in which there were two or more predicate acts alleged. *See, e.g., United States v. Parness*, 503 F.2d 430, 438 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801; *United States v. Aleman*, 609 F.2d 298, 304 (7th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). But in *Sedima*, the Court suggested, in dicta, that "two of anything do not generally form a pattern" and that the scope of RICO could be limited by developing a more meaningful definition of a "pattern of racketeering activity." *Sedima*, 105 S.Ct. at 3285 n. 14. The Court relied upon legislative history in noting that "continuity plus relationship" combine to produce a pattern. *Id.* (quoting S.Rep. No. 91–617, p. 158 (1969)).

In response to *Sedima*, alternative theories of "pattern" are developing. Some courts hold that continuity is demonstrated where there are at least two "schemes" alleged. *See, e.g., Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir.1986); *Fleet Management Systems v. Archer-Daniels-Midland Co.*, 627 F.Supp. 550 (C.D.Ill.

---

1. A similar view of § 1962(c) was adopted in *United States v. Jannotti*, 729 F.2d 213, 226 (3d Cir.1984), which held that "the mere fact that a defendant works for a legitimate enterprise and commits racketeering acts while on the business premises does not establish that the affairs of the enterprise have been conducted 'through' a pattern of racketeering activity." *Id.* (quoting *United States v. Cauble*, 706 F.2d 1322, 1332 (5th Cir.1983)). Although the mail fraud in the instant case was facilitated by the position defendant occupied within the enterprise, it was an action taken only against the enterprise—it was

not racketeering activity conducted through the enterprise.

2. At the risk of re-opening the Pandora's box that the *Sedima* Court attempted to nail shut, it is entirely contrary to the statutory scheme and legislative history of § 1962(c) to hold that the instant case of a lone employee converting corporate funds and supplies to his personal use could constitute "racketeering activity." This act of garden variety fraud does not carry the type of inherent danger and threat to society which RICO was designated to attack.

1986). Other courts have adopted a less mechanical case-by-case approach, examining a variety of factors. *See, e.g., Bank of America National Trust & Savings Association v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986).

 This Court recently examined the question and adopted a flexible approach for determining whether the alleged activities have sufficient continuity to constitute a pattern. Continuity could be satisfied by a showing of either: 1) more than one scheme, or 2) an open-ended continuous scheme which contains a multiplicity of predicate acts. Under the second prong, a variety of factors should be evaluated to determine the continuous—rather than sporadic—nature of the activity, including duration, number of predicate acts and victims, and likelihood that the scheme would continue indefinitely and be an ongoing threat to the public interest. *See generally, Temporaries, Inc. v. Maryland National Bank,* 638 F.Supp. 118 (D.Md.1986).

In the instant case, there is only one scheme alleged, the scheme to defraud the employer. A variety of actions were taken in furtherance of that scheme, but the only racketeering activities alleged were the mailings from insurance companies. Applying the factors outlined above, there were only eight mailings specifically alleged, and these occurred over a period of less than four months. The only victim of this scheme was the employer, indicating that the scheme was narrow in scope. Furthermore, the scheme ended as soon as the employee was fired, and was not ongoing at the time this complaint was filed, indicating the sporadic, short-term nature of the scheme. Thus, there is an insufficient indication of continuous racketeering activity to sustain an action under RICO. *See Temporaries, supra,* (two month scheme involved numerous phone calls was isolated, and not a continuous nature).

Because the complaint fails to state a RICO claim, there is no basis for federal jurisdiction under RICO. 18 U.S.C. § 1964. There is no other basis for this Court to exercise jurisdiction in this case, and ac-cordingly, defendant's motion to dismiss will be granted.