966 F.2d 1442
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Ronald R. FOGAL, Plaintiff-Appellant,
v.
Raymond A. RICHARDS; P.I.E. Nationwide, Incorporated,
Defendants-Appellees.
Ronald R. FOGAL, Plaintiff-Appellee,
v.
P.I.E. NATIONWIDE, INCORPORATED, Defendant-Appellant.
Raymond A. RICHARDS, Defendant.
 Nos. 91-2329, 91-2342.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 5, 1992
Decided: June 25, 1992
 
 Argued: Gerson Bernard Mehlman, Snyder, Baron, Mehlman & Wais, Baltimore, Maryland, for Appellant.
 Andrew Jay Graham, Kramon & Graham P.A., Baltimore, Maryland, for Appellee.
 On Brief: Stephen L. Snyder, Barbara L. Nudell, Snyder, Baron, Mehlman & Wais, Baltimore, Maryland, for Appellant.
 Kathleen A. Birrane, Kramon & Graham, P.A., Baltimore, Maryland, for Appellee.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This is an appeal from a directed verdict denying a claim of fraud arising out of a Workmen's Compensation settlement agreement. Appellant-Cross-Appellee Fogal, claims that his employer, P.I.E. Nationwide, Inc. (herein "PIE"), fraudulently induced him to resign from his job as a truck driver as a condition precedent to his receiving a lump-sum settlement of a Workmen's Compensation claim. Finding no error in the decision of the district court, we affirm.
 
 I.
 
 2
 PIE is a Florida corporation engaged in freight transportation. In October of 1977, when Fogal was 56 years old, PIE hired him to drive 18 wheel tractor trailers. In October 1978, Fogal sustained various work-related injuries, for which PIE voluntarily paid 13 months of temporary total disability. Later, after an adversarial hearing before the Workmen's Compensation Commission (herein"Commission"), PIE paid a lump sum settlement of $32,500.00, based on a finding that the accident had rendered Fogal fifty percent disabled.
 
 
 3
 Within weeks of receiving this settlement, Fogal returned to his job with a note from his physician stating that he was able to work. Eventually, over PIE's objections, Fogal passed the Department of Transportation (herein "DOT") physical and was reinstated in his prior job.[1] Fogal returned to work in July 1980. Almost two years later, in March 1982, Fogal sustained another injury to his back and filed a second Workmen's Compensation claim. As a result of this injury, Fogal was out of work for 14 months, for which he received social security benefits, as well as benefits from a private insurance policy. Further, PIE paid temporary total disability benefits for 13 of the 14 months, through May 12, 1983, when Fogal reached maximum medical improvement.2 In June 1983, Fogal passed the DOT physical and returned to work.
 
 
 4
 Citing continued back pain from the 1982 accident, Fogal stopped working on August 10, 1983, and collected temporary benefits through November 1983. At this time, the parties began discussing a lump sum settlement of Fogal's 1982 claim. In February 1984, after much negotiation, Fogal agreed to settle his claim for $35,000.00 and to resign. Fogal denies that he agreed to resign, saying he planned to return to work, despite the fact that he was settling a claim for total disability. PIE wrote a letter to memorialize the terms of the agreement, which included mention of the resignation. Fogal denies ever receiving the letter.
 
 
 5
 On March 19, 1984, the Commission approved the settlement package agreed to by the parties, although PIE's attorney did not bring Fogal's resignation to the Commission's attention because he did not believe that he had any obligation to do so. PIE maintains that all documents pertaining to the settlement, including the letter of resignation, were executed before the hearing and that Fogal's attorney signed the resignation letter as a witness.
 
 
 6
 Fogal's version of the events of that day differs significantly. He claims that the settlement agreement was executed before the hearing, absent the letter of resignation. Later, when he went to pick up the settlement check, he claims that PIE's attorney refused to deliver it, unless Fogal signed a letter of resignation. Fogal contends that he signed the letter because he was in desperate financial straits, although the evidence at trial painted a different picture.[3] He explained his attorney's signature on the letter by saying it was forged. However, after a battle of experts, the trial court found that the signature was genuine.
 
 
 7
 Fogal's version of these events was equally inconsistent with his subsequent actions. Although his attorney accompanied him to pick up his settlement check, Fogal never complained that he had just been forced to resign. Soon thereafter, PIE informed Fogal that his name was removed from their seniority list. At that time, Fogal made no claim to the Teamster's Union (herein "Union") or PIE that he had resigned under protest. Indeed, four days later, Fogal executed a Notification of Retirement form in order to obtain his retirement benefits from the Union. On the notification form, Fogal listed the date of his retirement as February 29, 1984, the date PIE wrote to Fogal confirming their settlement agreement. Moreover, he affirmed that he was taking a "disability," as opposed to an early or normal retirement.
 
 
 8
 Fogal had no further contact with PIE until nearly a year and a half later, in October 1985, when he filed a grievance with the Union, claiming that he had been forced to retire. The Union found no evidence to support Fogal's claim and his grievance was denied. Fogal next filed a motion with the Commission to re-open his compensation claim on the same grounds. The Commission heard and denied the motion.
 
 
 9
 Fogal then filed a ten count complaint in Federal District Court for the District of Maryland. Seven of those counts were dismissed at summary judgment and are not at issue in this appeal. The three remaining counts were for fraudulent concealment of material fact, fraudulent failure to disclose, and constructive fraud. The heart of each claim was that PIE fraudulently induced Fogal's resignation. At the close of all the evidence, the district court granted a directed verdict for PIE as to the remaining counts. Fogal challenges the propriety of that directed verdict.
 
 II.
 
 10
 When reviewing a district court's grant of a directed verdict, this court must consider the evidence de novo, assuming the same posture as did the district court. In other words, this court must ask whether, when viewing the evidence in the light most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion. See Ingram Coal Co. v. Mover Ltd. Partnership, 892 F.2d 363, 365 (4th Cir. 1989). A court must direct a verdict where "there can be but one conclusion as to the verdict that reasonable jurors could have reached. Unless there is substantial evidence to support the verdict asked of the jury, the reviewing court must direct the verdict upon request." Gairola v. Comm. of Va. Dept. of Gen. Ser., 753 F.2d 1281, 1285 (4th Cir. 1985).
 
 
 11
 Whether the proof offered by the plaintiff is sufficient to overcome a directed verdict must be determined with reference to the standard of proof applicable to the claim. Where, as here, the plaintiff is required to prove his claim by clear and convincing evidence, "the trial judge in disposing of a directed verdict motion should consider whether a reasonable factfinder could conclude ... that the plaintiff [had proven his claim] with convincing clarity." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 III.
 
 12
 The district court properly concluded that Fogal presented no evidence to support his claim for constructive fraud. Constructive fraud arises "from a breach of duty where a relationship of trust and confidence exists." Crawford v. Mindel, 57 Md. App. 111, 121, 469 A.2d 454, 459 (1984). A relationship of trust and confidence exists "where a party is, under the circumstances, justified in believing that the other party will not act in a manner adverse or inconsistent with the reposing party's interest or welfare." Finch v. Hughes Aircraft Co., 57 Md. App. 190, 235, 469 A.2d 867, 889 (1984). Fogal offered no evidence that a relationship of trust and confidence existed at the time of the alleged fraud. Thus, the district court properly directed a verdict in PIE's favor on this count.
 
 
 13
 Fogal's remaining fraud claims are based solely on his own implausible version of the events leading up to and following his settlement with PIE and the testimony of two handwriting experts, whose testimony was effectively rebutted. Fogal's testimony regarding the letter of resignation was internally inconsistent and was contradicted by all other evidence about that event. Additionally, Fogal's actions following the settlement are inconsistent with his claim of having been defrauded into resigning. The district court correctly concluded that Fogal's claim of fraud, at best, falls short of the clear and convincing proof from which a reasonable trier of fact could find that this was actionable fraud. Indeed, even if Fogal's version of the facts were true, then he has at best stated a claim for breach of the settlement contract, and not for fraud. The district court properly directed a verdict in PIE's favor on these counts as well.
 
 
 14
 For the foregoing reasons, the decision of the district court is
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Concurrent with his application for reinstatement, Fogal represented to the Social Security Administration that he was totally disabled as a result of the accident and that he should continue to receive social security benefits. He was apparently unsuccessful in this attempt
 
 
 [2]
 Under Maryland law, all work related injuries are compensated under the terms of the Workmen's Compensation statute. This Code provides that employers must pay the appropriate benefits until the injured employee is able to return to work or reaches maximum medical improvement, even if the employee is then unable to return to work
 
 
 [3]
 The evidence at trial demonstrated, for example, that Fogal had recently purchased three new automobiles, including a Cadillac, that he had installed air conditioning in his home, and that he had purchased some $50,000.00 worth of stock in 1984